PEOPLE v HANNAFORD

Docket No. 99178. Submitted January 29, 1988, at Lansing. Decided March 8, 1988. Leave to appeal applied for.

William J. Hannaford was a passenger in an automobile which was stopped by police at approximately 1:30 A.M. on April 12, 1986. The driver of the vehicle was arrested for drunk driving. Hannaford and the two other passengers were told they could walk or be transported in the police car to an all-night restaurant or to the police station to arrange and wait for transportation. They chose to ride in the police car to a restaurant. Although none of the passengers appeared armed or dangerous and all were free to leave the scene, they were told that, because of the late hour, the fact that the men had been drinking and because the police officer, being alone, could not contain their movement in the patrol car, they would be subjected to pat-down searches prior to entering the police car. None objected or left the scene. During the pat-down of Hannaford, the police officer discovered a pistol in Hannaford's overcoat pocket. Hannaford was charged with carrying a concealed weapon in Oakland Circuit Court. Defendant moved to suppress the evidence as the product of an illegal pat-down search. The court, John N. O'Brien, J., denied the motion. Defendant then entered a conditional plea of guilty to the charge and was sentenced. Defendant appealed from the denial of his motion to suppress the evidence.

The Court of Appeals *held:*

The limited intrusion created by the pat-down search for weapons was not an unreasonable search under the circumstances. The police officer's conduct was entirely reasonable and not in violation of the Fourth Amendment.

Affirmed.

SEARCHES AND SEIZURES — PAT-DOWN SEARCHES — TRANSPORTATION OF INDIVIDUALS NOT UNDER ARREST — SAFETY OF POLICE OFFICER.

A pat-down search for weapons conducted by a police officer prior

REFERENCES

Am Jur 2d, Search and Seizures §§ 33, 39, 58.

Law enforcement officer's authority, under Federal Constitution, to "stop and frisk" person—Supreme Court cases. 32 L Ed 2d 942.

to allowing a person to enter a police car is not unreasonable where the police officer is alone, the hour is late, the person has been drinking, and, being free to accept or decline, has accepted the police officer's offer of a ride to where the person can arrange for further transportation.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Margaret G. Horenstein,* Assistant Prosecuting Attorney, for the people.

*John R. Mann III,* for defendant on appeal.

Before: DANHOF, C.J., and MACKENZIE and P. R. JOSLYN,* JJ.

PER CURIAM. Defendant entered a conditional plea of guilty to carrying a concealed weapon, MCL 750.227; MSA 28.424, following the trial court's denial of his motion to suppress evidence and this Court's denial of his application for leave to appeal (Docket No. 94571). Sentenced to two years probation with thirty days in jail, defendant now appeals from the suppression ruling as of right. We affirm.

Defendant was one of three passengers in a car stopped at approximately 1:30 A.M. on Saturday, April 12, 1986, by Police Officer Henry Hartfelder. The driver of the vehicle was arrested for drunk driving. Neither the propriety of the traffic stop nor that arrest is challenged.

After arresting the driver, Officer Hartfelder learned that none of the three passengers had a valid driver's license. According to Hartfelder, when he informed the passengers that the vehicle would have to be impounded, defendant asked how they were going to get home. Hartfelder told them

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

that they could either walk or be transported to either a nearby all-night restaurant or to the police station to arrange and wait for transportation. The passengers chose to take a ride to a restaurant. Hartfelder then left them with backup Officer Mark Cole to be given a ride. The officers agreed that none of the passengers appeared armed or dangerous and all were free to leave the scene.

According to Officer Cole, he also reviewed the passengers' options with them and they said they wanted to be taken to a nearby restaurant. Because of the late hour, the fact that the men had been drinking, and because he could not contain their movement in the patrol car, Cole told the passengers they would have to be patted down before entering his patrol car. None objected or left the scene. Defendant was the second passenger to be patted down. During the pat-down, Cole discovered a pistol in defendant's overcoat pocket.

According to the police officers, none of the passengers ever indicated that he wanted to walk to a phone. The officers never suggested that the passengers had to ride with them; the ride was offered as a courtesy and for their safety. According to Officer Cole, the pat-down was consensual. According to defendant, on the other hand, the officers never asked him what he wanted to do and never offered him a ride. Instead, defendant planned to walk to an all-night gas station approximately one hundred yards away. He was unaware that he was going to be searched until he saw Cole pat down one of the other passengers. When he told Cole that he wanted to walk to the gas station the officer responded by conducting a nonconsensual pat-down.

Defendant contends that the pistol should have been suppressed as the product of an illegal pat-

down under *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). The people concede that under *Terry* the police did not have articulable suspicions of criminal activity or that defendant was armed, but maintain that defendant consented to the search. The trial court found that defendant chose to accept a ride from the police. Balancing the intrusiveness of the pat-down against the officer's need to protect his own safety, the court ruled that under the instant circumstances— where the passengers had been drinking, the stop was made during the early morning hours, the offer of a ride was accepted, and the three passengers would be riding in the back seat of the police car—the pat-down was reasonable and thus not violative of defendant's Fourth Amendment rights.

Courts in at least three states have considered factual situations similar to that presented in this case. In *People v Scott,* 16 Cal 3d 242; 546 P2d 327; 128 Cal Rptr 39 (1976), the defendant was stopped on suspicion of drunk driving. Rather than arrest him, the police offered him a ride. Before he was allowed in the patrol car, defendant was frisked and the police discovered a bag of marijuana. The California court held that a police officer who offers a person a ride cannot lawfully subject that person to a non-consensual pat-down search for weapons when the individual is not under arrest, and the officer has no duty to transport him and no reason to believe that he is armed and dangerous.

Two other courts, however, have reached the opposite conclusion. In *People v Coleman,* 24 NY2d 1005; 250 NE2d 237; 302 NYS2d 831 (1969), a police officer picked up a hitchhiker for the infraction of walking on a highway and offered him a ride. The New York Court of Appeals held that a search for weapons was a reasonable means for

the officer to protect himself in the confined space of an automobile.

In *Commonwealth v Rehmeyer,* 349 Pa Super 176; 502 A2d 1332 (1985), the defendant was stopped on suspicion of drunk driving. After administering field sobriety tests, the officer who stopped the vehicle decided not to arrest the defendant. Instead, he suggested that the defendant either call his home and get a ride from someone in his family or accept a ride from the officer in the patrol car. The defendant accepted the opportunity to use the police car as a taxicab. However, before allowing him to enter the patrol car, the officer subjected him to a pat-down search for weapons. The Pennsylvania Superior Court, noting the potential danger to police officers in such situations, found the officer's conduct reasonable and the fruits of the resulting search admissible in evidence.

A previous decision of this Court suggests that the better reasoning lies with the New York and Pennsylvania courts, rather than the California court. In *People v Otto,* 91 Mich App 444; 284 NW2d 273 (1979), a trooper warned the defendant against hitchhiking on a freeway and told him that he would transport him off the expressway. Before putting the defendant in the patrol car, the trooper conducted a pat-down search of the defendant and found a gun. This Court stated:

> [W]e have no trouble in sustaining the subsequent pat-down as being reasonable under the circumstances. The alternate to the frisk would be to handcuff defendant but that in itself would be a greater intrusion than a pat-down. Frisks, when made for the officer's own protection, are justified under both *Terry* and [*Pennsylvania v*] *Mimms,* [434 US 106; 98 S Ct 330; 54 L Ed 2d 331 (1977)]. As the *Terry* court noted:

"Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives." 392 US at 23-24.

In *Mimms,* the Supreme Court noted that a significant number of killings of police officers occurred in connection with traffic stops. While the instant case is not the usual traffic stop where the officer on foot approaches the stopped vehicle, it is obvious that an officer whose hands are on the wheel of his own vehicle is an easy victim of an armed passenger sitting behind him. [91 Mich App 451-452.]

In the instant case, we do not believe that the limited intrusion created by the pat-down search for weapons was, on balance, an unreasonable search under the circumstances. The officers testified that while they do not automatically search everyone entering a police car while not under arrest—it was suggested that there would be an exception for an injured person being taken to a hospital for emergency treatment—they usually do so, particularly where, as here, they are dealing with persons who have been drinking, it is late at night or early in the morning, and particularly where, as here, an officer has no partner who might keep watch on the passengers while another officer attends to the driving. The Fourth Amendment was surely not intended to stand for the proposition that police officers must either abandon civilians on highways at night or transport them at the risk of personal safety, rather than transport them at reduced risk of personal safety by first subjecting them to a frisk for weapons.

Defendant cites *People v Parham,* 147 Mich App 358; 382 NW2d 786 (1985), in support of his position that this pat-down search was illegal. In *Parham* the defendant was subjected to a pat-down prior to performing certain field sobriety tests. This Court found the search unreasonable absent a suspicion that the defendant was armed. *Parham* is clearly distinguishable from the instant case, since it did not involve the transportation of the defendant in a patrol car. Considerations of safety in the confined space of an automobile where the officer's attention is on driving rather than the person sitting behind him, central to the instant case, were wholly absent in *Parham.*

Finally, defendant urges that, because there was a twenty-four-hour gas station across the street from where the vehicle was stopped, he should have been allowed to go to the station to make his telephone call, rather than being subjected to a pat-down search preparatory to being transported to the restaurant. The trial court resolved the question of fact as to whether defendant had sought to exercise this option against the defendant and this Court will not disturb that determination. The trial court reasonably accepted the officer's testimony that defendant had either requested or volunteered for the ride with the officer to the restaurant. Given that factual premise, the officer's subsequent conduct was entirely reasonable and not in violation of the Fourth Amendment.

Affirmed.