[No. A045534. First Dist., Div. Three. Apr. 12, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
WAYNE TOBIN, Defendant and Appellant.

**COUNSEL**

Charles H. James, Public Defender, and William T. Egan, Jr., Deputy Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye and Herbert F. Wilkinson, Deputy Attorneys General, for Defendant and Respondent.

## Opinion

**BARRY-DEAL, J.**—After denial of his Penal Code section 1538.5 motion to suppress evidence, Wayne Tobin pleaded guilty to transportation of cocaine. (Health & Saf. Code, § 11352.) On March 28, 1989, the court suspended imposition of sentence and placed appellant on probation for three years. He contends that a warrantless search of his person violated his constitutional right to privacy under the Fourth and Fourteenth Amendments because the officers did not give him the option not to be searched. We find that the officers acted properly and affirm the judgment.

### The Facts[1]

At about 7:30 p.m. on New Year's Day in 1988, Officer Hakeem Shabazz[2] and a trainee officer stopped a northbound vehicle on Highway 680 for a false evidence of registration. Appellant was a passenger seated in the right rear of the vehicle. Another passenger was seated in the front. It developed that the vehicle had a false registration, the driver had only a suspended driver's license, and the front seat passenger had no license. Officer Shabazz did not ask appellant about a license, because the officer knew appellant did not have one from an encounter earlier in the day when appellant was taken to the county hospital, pursuant to Welfare and Institutions Code section 5150, for a possible overdose of narcotics.

Because none of the occupants of the vehicle was a licensed driver, and in light of the fact that it was deemed unsafe and improper to leave the vehicle on the shoulder of the freeway, Officer Shabazz determined to have the car towed and impounded. He explained to the three men that this would be done.

Officer Shabazz offered to call one of their friends to pick them up. Contact was made through the police dispatcher with someone in Pittsburg who agreed to pick them up but not immediately. It was arranged that the three men would meet their ride at Denny's restaurant just off the freeway at an exit about three-quarters of a mile away. Officer Shabazz believed that it would be extremely unsafe for the men to attempt to walk to Denny's, for, among other reasons, they would have to cross over two lanes of freeway traffic. Also, walking on the freeway is illegal, so Officer Shabazz did not intend to let the men do so. Furthermore, the other passenger was in bad

---

[1] The following facts are taken from the preliminary hearing transcript and other evidence adduced at the hearing on appellant's suppression motion.

[2] The witness's name is spelled "Akeem" in the reporter's transcript of the Penal Code section 1538.5 hearing and "Hakeem" in the preliminary hearing transcript.

physical shape and incoherent, appearing either to be intoxicated or to be suffering from a nervous condition.

Officer Shabazz explained to all three men that they would not be allowed to walk on the freeway and that the officers would be happy to transport them to Denny's. Everyone appeared to understand, and no one objected. Officer Shabazz then explained to the three men that because they were going to be transported in an uncaged, unmarked vehicle, they would have to be pat-searched for "weapons and everything." The driver and other passenger alighted from the car willingly and were pat-searched before entering the squad car. Appellant, about whom Officer Shabazz was particularly concerned because he had been "5150'd" earlier that day, raised no objection. Officer Shabazz then said to appellant, " 'Okay, do you want to step out of the vehicle? I'll pat search you for any weapons.' " Appellant stepped out of the vehicle. The officer's impression was that appellant wanted to ride in the squad car and was submitting to the search. If appellant had declined the pat-search, Officer Shabazz would not have had him transported in the sergeant's uncaged vehicle.

When Officer Shabazz patted appellant's outer jacket pocket for weapons, he was stuck by a hypodermic needle. Officer Shabazz had appellant remove the needle from his pocket and then arrested him for illegally possessing it. (Bus. & Prof. Code, § 4149.) A search of appellant's person netted 24.4 grams of cocaine and over $400 in cash.

*Discussion*

Appellant contends that the trial court erred in denying his suppression motion. ■ The two-step standard of review is well defined. First, it is the function of the trial court to find the facts based on the evidence before it. On appeal we uphold the trial court's findings if they are supported by substantial evidence. Second, it is the role of this court to decide whether, given the facts, the search was reasonable. This is a question of law on which we exercise our independent judgment. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].)

■ Relying on *People* v. *Scott* (1976) 16 Cal.3d 242 [128 Cal.Rptr. 39, 546 P.2d 327], appellant contends that the pat-search in this case was improper because appellant had not been informed that he had a right to refuse the ride and thereby avoid the search. That case has some factual similarities to the case at bench.

In *Scott,* defendant and his three-year-old son were spotted by highway patrol officers standing on a traffic island at the intersection of Highway 101

and an off-ramp. (*People* v. *Scott, supra,* 16 Cal.3d at pp. 245 (lead opn. of Mosk, J.), 252 (dis. opn. of Richardson, J.).) Both appeared to be urinating, and defendant was found to be too intoxicated to care for himself or his child. Defendant had no identification, but stated he was taking the child to its mother in San Francisco. Rather than arresting defendant, the officers volunteered to drive the pair to their destination. The child was placed in the patrol car. Defendant was told that he had to be patted down for the officers' protection. An officer told defendant to raise his arms, which he did, without expressing either consent or objection. As he lifted his arms a pocket partially opened and a baggie of marijuana became visible. (*Id.,* at pp. 245-246 (lead opn. of Mosk, J.), 252 (dis. opn. of Richardson, J.).) The trial court found that defendant did not consent to the search. (*Id.,* at p. 249.)

The majority of the Supreme Court held that special circumstances alone did not justify the patdown and that because defendant was not under arrest, the patdown had to be tested under the standards of *Terry* v. *Ohio* (1968) 392 U.S. 1, 27 [20 L.Ed.2d 889, 909, 88 S.Ct. 1868], namely, the officer had to have " 'reason to believe that he [or she] [was] dealing with an armed and dangerous individual . . . .' " (*People* v. *Scott, supra,* 16 Cal.3d at p. 249.) The court recognized the dilemma inherent in its holding, which set up an apparent conflict between two laudable objectives of accommodating the state's interest in the safety of officers who volunteer to give rides in such cases and the individual's right to be secure from unreasonable invasions of privacy. The court said that in order for patdown searches to be valid under these or similar circumstances, officers must first inform the individuals that they have a right to refuse the ride, and if they accept it, they will be subjected to a patdown search for weapons. (*Id.,* at p. 250.) Because defendant Scott was not presented with this option and did not consent to the search, the evidence should have been suppressed. (*Ibid.*)

We believe that the *Scott* decision is distinguishable on its facts from the case at bench and is not controlling. In *Scott,* the opening sentence of the opinion stated that the officer had "no duty to transport" the defendant. (16 Cal.3d at p. 245.) Here, by way of contrast, a duty to transport existed. In denying appellant's motion to suppress, the trial court stated that the public safety required the officer to do what he did, and that the search in question was reasonable and appropriate. This ruling of the trial court contains both factual findings and legal conclusions. We hold that the factual findings are supported by the evidence. As to the legal conclusions, we agree with them, and affirm the order. (*People* v. *Leyba, supra,* 29 Cal.3d at pp. 596-597.)

Here the officer had a duty to transport appellant. The officer correctly determined that he could not permit any of the three men to drive; one of

them appeared physically unable to do so, and none of them were licensed. Therefore, the vehicle, which was not properly registered, had to be towed. The officer could not leave the men to be transported by the tow truck. It is common knowledge that tow trucks generally are not equipped to handle three passengers, and it is unlikely that the driver would have been able to take them to their rendezvous with their friend. Also, even if the officer could have left the men for the tow truck driver to transport, he might have endangered that driver had he not first frisked the three to determine that they were not armed and dangerous. This duty is particularly apparent in light of the officer's knowledge that appellant had a serious drug problem. Failure to take this precaution might have exposed the officer and his employer to liability if the tow truck driver were harmed. (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) Dangerous Conditions of Public Property, §§ 3.18-3.24, pp. 210-222.)

Furthermore, we take judicial notice of the fact that at 7:30 p.m. on New Year's Day it was dark. (Evid. Code, §§ 452, subd. (h), 459.) The parked vehicle on the freeway shoulder was at risk of being hit by passing cars. (See, e.g., *Willis* v. *Gordon* (1978) 20 Cal.3d 629 [143 Cal.Rptr. 723, 574 P.2d 794].) But, even more seriously, the officers had no guaranty that appellant would not attempt walking on the freeway, thereby endangering not only himself, but motorists swerving to avoid him. These are just a few of the many possibilities which might have led not only to injury or property loss but also to government liability.

As the officer testified, walking on the freeway is dangerous and illegal. (Veh. Code, § 21960; see, e.g., *Fry* v. *Young* (1968) 267 Cal.App.2d 340, 347-350 [73 Cal.Rptr. 62]; *Rangel* v. *Badolato* (1955) 133 Cal.App.2d 254, 256-257 [284 P.2d 138].) While the cited code section contains an exception for and permits drivers of disabled vehicles to walk to the nearest exit in order to summon help, that exception is limited to "that side of the freeway upon which the vehicle is disabled," and therefore would not have applied in this case, where the officer testified the men would have had to cross lanes of heavy freeway traffic in order to get to their ride. We take judicial notice of the fact that Highway 680 is busy and was undoubtedly heavily travelled at the time in question. (Evid. Code, §§ 452, subd. (g), 459.)

Thus, the facts of this case distinguish it from *Scott.* Although the physical setting is not described in detail by the Supreme Court, the place where defendant Scott and his child were found is described as a "traffic island formed by the Marin City off-ramp of Highway 101." (*People* v. *Scott, supra,* 16 Cal.3d at p. 245.) Because the Supreme Court found no duty to transport Scott, we must conclude that the defendant there, unlike appellant in the case at bench, had an easy way to get off the island without

endangering himself and others on the freeway. Here the trial court found facts which indicated to it that the officer acted properly, and we hold that those facts imposed a duty on Officer Shabazz to remove appellant and his companions from a position which was undeniably dangerous to themselves and to other members of the public.

In addition, under decisions on which the trial court relied in its ruling, and which were decided subsequent to *People* v. *Scott, supra*, 16 Cal.3d 242, the finding of a duty to protect the public safety renders the patdown and transportation of appellant valid. In *New York* v. *Quarles* (1984) 467 U.S. 649 [81 L.Ed.2d 550, 104 S.Ct. 2626], the police chased an armed rapist, caught and handcuffed him, and asked him where the gun was; he replied that it was " 'over there.' " (*Id.*, at pp. 651-652.) The United States Supreme Court held that where there was no claim that defendant's statements were compelled by police conduct which overcame his will to resist, "on these facts there is a 'public safety' exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence, and that the availability of that exception does not depend upon the motivation of the individual officers involved." (*Id.*, at pp. 654, 655-656 [81 L.Ed.2d at pp. 555, 557]; see *Scott* v. *United States* (1978) 436 U.S. 128, 136 [56 L.Ed.2d 168, 177, 98 S.Ct. 1717] ["the existence *vel non* of . . . a [statutory or constitutional] violation turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him [or her] at the time."].)

The court explained the circumstances which would excuse compliance with *Miranda*. (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602 , 10 A.L.R.3d 974].) "The exception will not be difficult for police officers to apply because in each case it will be circumscribed by the exigency which justifies it. We think police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect." (*New York* v. *Quarles, supra*, 467 U.S. at pp. 658-659 [81 L.Ed.2d at p. 559].)

In holding that *Miranda* rights under the Fifth Amendment are subject to exigency exceptions, the court emphasized that it had "long recognized an exigent-circumstances exception to the warrant requirement in the Fourth Amendment context. [Citations.]" (*New York* v. *Quarles, supra*, 467 U.S. at p. 653, fn. 3 [81 L.Ed.2d at p. 555].)

Thus the United States Supreme Court has made clear that the needs of public safety may outweigh both Fourth and Fifth Amendment rights under appropriate circumstances. Here, the trial court expressly found that

such circumstances existed, and the evidence supports that finding. The appellate courts of this state have long recognized that the need to transport a person in a police vehicle in itself is an exigency which justifies a pat-search for weapons. (*People* v. *Mack* (1977) 66 Cal.App.3d 839, 848 [136 Cal.Rptr. 283], citing *People* v. *Brisendine* (1975) 13 Cal.3d 528, 538, 545 [119 Cal.Rptr. 315, 531 P.2d 1099] ["In the case of transportation in the police vehicle, . . . the necessity of close proximity will itself provide the needed basis for a protective pat-down of the person. . . ."] and *People* v. *Norman* (1975) 14 Cal.3d 929, 938 [123 Cal.Rptr. 109, 538 P.2d 237].)

We conclude that the exigency which existed and the need for public safety supported the officer's conducting a minimally intrusive patdown search of appellant's outer clothing. (See generally, *People* v. *Hill* (1974) 12 Cal.3d 731, 746 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on another ground in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal.Rptr. 786, 558 P.2d 872].) We do not believe that *People* v. *Scott, supra,* 16 Cal.3d 242, holds otherwise, but to the extent that it might have been so interpreted, it has been limited by *Quarles* and other "public safety" rulings. The evidence was properly discovered and need not be suppressed. (*New York* v. *Quarles, supra,* 467 U.S. at p. 659 [81 L.Ed.2d at p. 559].) No error occurred.

The judgment is affirmed.

Merrill, J., concurred.

**WHITE, P. J.**—I respectfully dissent. In my view, this case is controlled by *People* v. *Scott* (1976) 16 Cal.3d 242 [128 Cal.Rptr. 39, 546 P.2d 327]. Stare decisis requires that we follow it. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; *People* v. *Brown* (1987) 193 Cal.App.3d 957, 962 [238 Cal.Rptr. 697].)

In *Scott,* the California Supreme Court considered whether "a police officer who proposes to give a private citizen a lift in his patrol car can lawfully subject him to a nonconsensual pat-down search for weapons when the individual is not under arrest *and the officer has no duty to transport him* and no reason to believe he is armed and dangerous." (16 Cal.3d at pp. 244-245, italics added.) The court held that an officer may not conduct a pat-down search in these circumstances. (*Id.,* at p. 249.) Nevertheless, the court recognized that cases will arise where the police, acting out of compassion, may offer rides to citizens although not absolutely required to do so. In order to "accommodate the state's interest in the safety of police officers who volunteer to give rides *not required by their duty,* and the individual's right to be secure from unreasonable invasions of his privacy," the court

mandated the following procedure: "[T]he officer must first inform the individual that he has a right to refuse the ride but if he accepts it he will be subjected to a pat-down search for weapons. Such a brief admonition will protect both the officer's safety and the individual's right to decide for himself whether he is willing to undergo a pat-down search in order to obtain the offered assistance of the police." (*Id.*, at p. 250, italics added.)

The majority contend that *Scott* is distinguishable because, unlike the officers in that case, Officer Shabazz had an affirmative duty to transport appellant off the freeway. (maj. opn. *ante*, at pp. 638-639.) Although I agree that the *Scott* procedure need not be followed when the police have a "duty to transport" the person searched (16 Cal.3d at pp. 245, 250), I do not believe that the duty in this case is of the type contemplated by the *Scott* majority.

The *Scott* majority did not explicitly specify the *type* of duty a police officer must be under in order to be excused from complying with the admonition procedure outlined in that case. In my view, the duty might be one of three types: (1) a statutory duty to transport a person (e.g., where an officer stops a driver for a traffic violation and the driver is unable to produce a driver's license or other identification (Veh. Code, § 40302, subd. (a)); *People* v. *Scott, supra,* 16 Cal.3d at p. 248); (2) a tort duty of due care owed by the officer to the person transported or to third persons; or (3) the kind of "general protective duties" of the police discussed by the dissent.[1]

In my view, it is clear that the police need not give a *Scott* admonition prior to pat-searching a person whom they have a *statutory* duty to transport. On the other end of the spectrum, the *Scott* majority necessarily rejected the *Scott* dissent's assertion that no admonition is required where the police transport a person merely as part of their "general protective duties." (*Scott, supra,* at pp. 249-250, 256-257.) Consequently, a "general protective duty" is not sufficient to excuse compliance with the *Scott* admonition procedure. The question left unanswered by *Scott* is whether the

---

[1] In arguing that the officer in *Scott* did in fact have a duty to transport the defendant in that case, the *Scott* dissent observed: "The general protective duties of police are a vital part of police activity, and there has been increasing emphasis on the need for expansion of the police role beyond that of mere apprehension and arrest of criminal suspects. . . . Recognition of the protective role to be played by the police has been extended by the American Bar Association in the ABA Standards Relating to the Administration of Criminal Justice, Compilation (1974), outlining the 'Major Current Responsibilities of Police': '. . . [M]ost police agencies are currently given responsibility, by design or default: . . . (iii) to aid individuals who are in danger of physical harm: . . . (v) to facilitate the movement of people and vehicles; (vi) to assist those who cannot care for themselves; . . . and (xi) to provide other services on an emergency basis.' [Citations.]" (*People* v. *Scott, supra,* 16 Cal.3d at p. 256, (dis. opn. of Richardson, J.).)

police are excused from giving the required admonition when they transport a person because such transportation is required by a tort duty of due care.

The majority do not point to any statute which *required* that Officer Shabazz transport appellant off the freeway. Consequently, his failure to give the *Scott* admonition cannot be excused on the theory that he had a statutory duty to transport appellant. Further, although I believe Officer Shabazz's decision to transport appellant off the freeway properly fell within the "general protective duties of the police," this is not enough, in my view, to excuse compliance with the *Scott* admonition. Consequently, I believe the majority have implicitly found that Officer Shabazz was excused from complying with *Scott* because he owed a tort duty of due care to appellant and the other drivers on Highway 680. I cannot join in this reasoning.

"As a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act. (Rest.2d Torts, § 314; 4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 554, p. 2821.)" (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 23 [192 Cal Rptr. 233, 664 P.2d 137].) However, once one undertakes to come to the aid of another he is "under a duty to exercise due care in performance and is liable if (a) his failure to exercise such care increases the risk of . . . harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." (*Ibid.*; Rest.2d Torts, § 323.) These general rules apply to police officers who render assistance to members of the public. (34 Cal.3d at p. 24, fn. 3; *Sullivan* v. *City of Sacramento* (1987) 190 Cal.App.3d 1070, 1076 [235 Cal.Rptr. 844].)

Had Officer Shabazz come upon appellant stranded on the roadside there is no question that, absent some special relationship, he would not have had a duty to come to appellant's aid. Here, however, it can be argued that Officer Shabazz "created" the peril facing appellant (and the peril appellant presented to the other drivers on Highway 680) when he stopped appellant's car on the highway. Thus, I can see where the majority could conclude that Officer Shabazz owed a duty of due care to appellant and, possibly, to other drivers on Highway 680 who might be endangered by appellant walking along the freeway.

It is here, however, that I part company with the majority. In my view, Officer Shabazz should not be permitted to rely on the very peril he created as an excuse for searching appellant without a warrant, probable cause, or any independent exigent circumstances. (See *Shuey* v. *Superior Court* (1973) 30 Cal.App.3d 535, 540-541 [106 Cal.Rptr. 452] [police-created emergency

did not justify warrantless seizure of person and home]; 2 LaFave, Search and Seizure (2d ed. 1987) § 6.5(b), p. 662.) In short, Officer Shabazz should not be permitted to bootstrap himself into an exception to the *Scott* admonition.

Nor am I persuaded by the majority's alternative argument that *Scott* has been "limited" by subsequent "public safety" rulings. (maj. opn. *ante* at p. 641.) The only arguably relevant subsequent decision the majority cite is *New York* v. *Quarles* (1984) 467 U.S. 649 [81 L.Ed.2d 550, 104 S.Ct. 2626]. In trying to bring this case within the "public safety" exception created by *Quarles,* the majority are, in essence, attempting to fit a square peg into a round hole. In *Quarles,* the Supreme Court created a "public safety" exception to the requirement that *Miranda*[2] warnings be given before a suspect's answers may be admitted into evidence. (*Id.*, at p. 655 [81 L.Ed.2d at pp. 556-557].) *Quarles* said nothing about the Fourth Amendment, other than to note that the Supreme Court has long recognized an exigent-circumstances exception to the warrant requirement. (*Id.*, at p. 653, fn. 3 [81 L.Ed.2d at p. 555].) The leap the majority take from the Fifth Amendment to the Fourth is untenable.

Moreover, even if I were to agree that a "public safety" exception could apply in this context, I cannot agree that the appellant in this case was required to ride in a police car against his will for the sake of "public safety."

The facts of this case are made far clearer by referring to a map of the area where the stop occurred. Consequently, a map of the subject area has been attached to this dissent as appendix A.[3]

The record indicates that the vehicle appellant was riding in was pulled to the side of the northbound lanes of Highway 680 at a location "just north" of the Monument Boulevard interchange and south of the Highway 24 and Highway 680 split. Officer Shabazz testified it was approximately three-quarters of a mile to a mile to the next exit (Willow Pass Road) via Highway 24, and that it was about three-quarters of a mile via Highway 680, but

---

[2] *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

[3] We may take judicial notice of this map under Evidence Code section 452, subdivision (g) ["Facts and propositions that are of such common knowledge within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute"] and subdivision (h) ["Facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"]. Since I am taking judicial notice of these matters in dissent, the parties have not been afforded the procedural protections provided by Evidence Code sections 455, subdivision (a) and 459, subdivisions (c) and (d).

that route would have required crossing two lanes of traffic to get to the 680 split. Based on this testimony, the approximate location of the stopped vehicle is marked on the attached map.

It should be noted that appellant was merely a passenger in the stopped vehicle. Although another passenger appeared to be intoxicated or suffering from a nervous condition, nothing indicated that appellant was *then* under the influence of drugs or was otherwise incapacitated.

Vehicle Code section 21960, subdivision (a) provides that "the driver or passengers of a disabled vehicle stopped on a freeway may walk to the nearest exit, in *either* direction, on that side of the freeway upon which the vehicle is disabled. . . ." (Italics added.) Thus, without violating the law or crossing lanes of traffic, appellant could have walked back to Monument Boulevard and gotten off at that exit, a distance of approximately three-quarters of a mile. Although this walk may have presented some risk to *appellant,* this risk did not justify the nonconsensual pat-search. Indeed, Officer Shabazz admitted as much when he stated that if appellant had refused to be searched "I don't believe I would have had him transported in the sergeant's vehicle."

In short, I do not believe the risk created by allowing appellant to walk the short distance back to the Monument Boulevard exit outweighed appellant's Fourth Amendment right to be free of invasions of his privacy. The officer here should have given appellant the explicit option mandated by *Scott:* Either submit to a pat-search and ride with me, or walk the three quarters of a mile back to Monument Boulevard. Here, it is likely appellant would have welcomed the opportunity to walk.

For the foregoing reasons, I dissent.

## Appendix A