STATE

v.

Steven A. LOMBARDI.

No. 98–136–C.A.

Supreme Court of Rhode Island.

March 22, 1999.

Aaron L. Weisman, Providence, for Plaintiff.

Paula Lynch Hardiman, Paula Rosin, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court on February 9, 1999, pursuant to an order directing the parties to appear and show cause why the issues raised in the defendant's appeal from a judgment of conviction for possession of a controlled substance should not be summarily decided.

After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we are of the opinion that cause has not been shown. The issues raised in the appeal will be decided at this time.

At the suppression hearing held prior to Steven A. Lombardi's trial for possession of a controlled substance, the testimony disclosed the following facts. On September 16, 1996, at 1:15 in the morning, John Santurri (Santurri) was driving on Cranston Street in the City of Cranston. With him as a passenger in the car was the defendant, Steven A. Lombardi (defendant). Santurri had offered to drive the defendant home from the bar

where Santurri worked as a bartender because the defendant, who had been at the bar, was too inebriated to ride the bicycle that he had used to get to the bar earlier. The bicycle was protruding from the trunk of Santurri's car during that ride.

As Santurri drove his car along Cranston Street, Officer Thomas Martin (Martin), who was parked in a parking lot on Cranston Street with another police officer, Officer Michael Jansen (Jansen), observed Santurri's vehicle and noticed that Santurri failed to give any signal indicating his turn from Cranston Street onto Gladstone Street. Because of that traffic violation, Martin followed Santurri and signaled him to stop. Martin then asked Santurri for his license and registration. Santurri was unable to produce a license and registration. After Martin checked Santurri's name and date of birth through the Registry of Motor Vehicle's computer, it was determined that Santurri's license to operate a motor vehicle had been suspended. Martin then placed Santurri under arrest and performed a custodial search. During the course of that search Martin discovered a small bag of cocaine and two tablets of Tylenol with codeine. Santurri was told that his car would be towed and impounded.

Because the defendant appeared intoxicated and because Santurri had told Martin that the reason he was giving the defendant a ride home was because the defendant was too intoxicated to ride his bicycle, Martin decided that it was best, for the defendant's own safety, that the other officer at the scene, Jansen, should drive him home while Martin drove Santurri to the police station. When that was explained to the defendant, he voiced no objection to being driven home. Martin then told the defendant that prior to placing him in the police cruiser, Martin would have to perform a pat-down search of the defendant in order to search for possible weapons that could endanger Jansen while he was driving. Again, the defendant voiced no objection.

Just as the pat-down search commenced, the defendant volunteered to Martin that he had cocaine in his pocket, which Martin then confiscated. As a result, the defendant was immediately placed under arrest for possession of a controlled substance and a custodial search was then performed on him. No weapon or further contraband was found. Martin testified that if the defendant had not pointed out the tiny packet of cocaine, he never would have discovered it.

The testimony of Santurri and the defendant at the suppression hearing differed in essentially every detail from Martin's testimony. They both testified that Santurri did signal his turn, that neither Santurri nor the defendant had ever possessed any cocaine, and that the defendant was not intoxicated that night. However, the trial justice found the testimony of Santurri and the defendant to be not credible and gave it no weight. The trial justice instead found the testimony of Martin to be credible. As a result, he found that the discovery of the cocaine was not the result of an illegal stop. He also found that the pat-down search of the defendant prior to placing him in the police car with Jansen was justified under the circumstances then prevailing. Consequently, the defendant's motion to suppress was denied. Later, following jury trial, the defendant was found guilty of illegally possessing the cocaine. He was sentenced to a term of three years, eleven days of which he was ordered to serve and the remaining thirty-five months and nineteen days of the sentence were suspended with probation to commence upon release. The defendant filed a timely appeal therefrom.

I

Motion to Suppress

The defendant first claims in his appeal that the motion justice erred in denying his motion to suppress because both the initial stop and the later pat-down search were illegal, thereby making the cocaine the fruit of an unlawful search. We disagree.

With respect to the initial stop of Santurri's car, Martin testified that he stopped the car because Santurri had failed to give any signal of his turn from Cranston Street. Martin testified that at the time traffic on Cranston Street that night was light. The defendant argues that because,

according to the defendant's interpretation of the record, there was no other traffic in the area, Santurri was not required to give a vehicle turn signal because G.L.1956 § 31–16–5 only requires a signal "in the event any other traffic may be affected by the movement." That might be a plausible argument if it were not for the error in the defendant's underlying premise. First, Santurri had pled guilty to the charge of failing to give a proper turn signal and, second, at no time in the record of the suppression hearing did Martin ever specifically testify that there were no other cars in the area. On cross-examination, Martin was asked "[y]ou were able to observe the turn signal violation because [there were] no other cars in the area. Traffic was light as you came?" To that, Martin responded "[y]es." The actual question asked of Martin was whether traffic was light not whether there was any traffic at all. It would be a mischaracterization to interpret Martin's response to that question as indicating that there was no traffic at all in the area at the time Santurri's car was stopped.

■ The credibility findings of a trial justice on a motion to suppress will not be disturbed unless clearly erroneous. *State v. Bailey,* 677 A.2d 407, 410 (R.I.1996); *State v. Beaumier,* 480 A.2d 1367, 1375 (R.I.1984). The motion justice here found that Martin's testimony was credible but rejected the testimony of Santurri and the defendant for not being credible. Based upon our review of the record, we cannot say that the trial justice's credibility findings were clearly erroneous. Accordingly, the motion justice's finding that Santurri's car was properly stopped was correct because Santurri's right turn made without signaling was in violation of our motor vehicle code and, therefore, there was no pretextual stop as suggested in this appeal. *See Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

■ The defendant next argues that the pat-down search of the defendant was unlawful because Martin had no reasonable suspicion that the defendant was armed and dangerous. In determining the validity of the officer's very brief initiation of a pat-down search of the defendant just prior to the defendant volunteering to the officer his pos-session of the cocaine, we utilize the factual findings—historical facts—determined by the suppression hearing justice. With those facts, we then determine *de novo* the validity of the pat down. *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

In *Maryland v. Wilson,* 519 U.S. 408, 415, 117 S.Ct. 882, 886, 137 L.Ed.2d 41, 48 (1997), the Supreme Court held that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." In *State v. Soares,* 648 A.2d 804 (R.I.1994), we had some four years earlier held that a police officer had a clear right to order a passenger in a car that had been validly stopped for any reason to step out of the car. We determined that the motivating factor in that situation was to protect the welfare of the police officer. We explained in *Soares* that the decision in *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), stood for the principle that a police officer "can order the operator of a car stopped for a traffic offense to get out of the vehicle." *Soares,* 648 A.2d at 806. We explained further that the United States Supreme Court extended that principle to passengers when it stated that "passengers in automobiles have no Fourth Amendment right not to be ordered from their vehicle once a proper stop is made." *Id.* (quoting *Rakas v. Illinois,* 439 U.S. 128, 155 n. 4, 99 S.Ct. 421, 436 n. 4, 58 L.Ed.2d 387, 409 n. 4 (1978)(Powell, J. concurring)). In *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Court additionally explained that the "police may order *persons* out of an automobile during a stop for a traffic violation * * *. Our decision rest[s] in part on the 'inordinate risk confronting an officer as he approaches a person seated in an automobile.'" *Soares,* 648 A.2d at 806 (quoting *Long,* 463 U.S. at 1047–48, 103 S.Ct. at 3480, 77 L.Ed.2d at 1218–19). Thus, "[i]n *Long* the Court was apparently recognizing that the same dangers presented by the driver of a car during a traffic stop also arise from other persons seated in the car." 648 A.2d at 806. The Court in *Wilson* reiterated that concern for an officer's safety.

In *Soares,* we were not faced with the issue of whether a pat-down search of the passenger in an automobile was permissible without reasonable suspicion that the passenger was armed and dangerous. While we did not address that issue in that case, it is, however, the very same concern for the police officer's safety which we believe is sufficient in this case to justify the minimal intrusion presented by the pat-down search that took place in this case.

We believe because of the exigency then present before him, that Officer Martin was justified in determining for himself that before ordering his fellow officer to drive the intoxicated defendant home in a police vehicle, he could be assured that the defendant had nothing on his person that might pose a danger to the life or well being of the driver officer.

On the particular facts present in this case, we believe that the slight intrusion involved here is not the sort of arbitrary interference by a law officer that the Fourth Amendment condemns. This is not a true *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) bulging-pocket-type intrusion. The police officer here was not looking to arrest or charge the defendant, he was simply trying to assist the defendant in getting to his home which was some miles away. It was one-thirty in the morning, in an area not well suited to early morning walkers, the defendant was intoxicated, and his friend's car was about to be impounded. On these facts, had the police officer let the intoxicated defendant walk or stumble home or if the officer had taken the defendant's bicycle out of Santurri's car trunk and let the intoxicated defendant ride it home or even walk and push the bicycle some miles distant to his home, the officers would have been subjected to severe criticism or an action for damages if either the defendant or another person had been injured or killed. The slight pat-down search in this case was certainly of the exigent-circumstance-type anticipated to be valid in *Terry.*

The defendant contends here on appeal that because Officer Martin testified that it did not appear to him that the defendant was "armed and dangerous," there was no justifiable reason for the officer to tell the defendant that he would be patted down before being allowed into the police vehicle. Actually the record is not that conclusive as to what the officer said. The transcript reveals his testimony on cross examination to be:

"Q. In short, there was nothing that appeared that Mr. Lombardi was armed and dangerous when you searched him?

"A. As far as I didn't see a gun hanging off his belt, no. But * * *."

The officer's attempt to continue with his answer was then interrupted by defense counsel's next question, and the issue was never again raised.

We note that Officer Martin, on the particular facts here, did not have to limit his suspicion or his precaution concern simply to ascertaining whether the defendant had a gun protruding from his belt or a *Terry* bulging pocket. An ordinary pen or pencil, when plunged into the neck of the police officer by an intoxicated passenger seated in the back seat of the police cruiser, would have been as lethal as any hand gun. The pen or pencil would have presented no *Terry* "bulge." The decisions of other state courts faced with similar situations support this conclusion.

In *People v. Hannaford,* 167 Mich.App. 147, 421 N.W.2d 608 (1988), *cert. denied,* 489 U.S. 1029, 109 S.Ct. 1162, 103 L.Ed.2d 221 (1989), a car was stopped at 1:30 in the morning and the driver of that car was arrested for drunk driving. None of the other three passengers in the car at the time had a valid driver's license. After the police officer told the three passengers that the car would have to be impounded, the defendant, William Joseph Hannaford (Hannaford), asked the officer how they were going to get home. The police officer told them that they could either walk or wait for someone to pick them up at a nearby restaurant or at the police station. The passengers, including Hannaford, accepted a ride by the police officer to the restaurant to wait for a friend. The police officers testified that none of the passengers appeared armed or dangerous.

"Because of the late hour, the fact that the men had been drinking, and because he could

not contain their movement in the patrol car," the passengers were subjected to a pat-down search by the police officer before being placed in the police officers vehicle. *Hannaford*, 421 N.W.2d at 609. "None [of the passengers] objected or left the scene" and none ever indicated that they wanted to walk to a phone instead of taking a ride. *Id.*

The Michigan court held that the pat-down search had been proper "particularly where, as here, they are dealing with persons who have been drinking, it is late at night or early in the morning, and particularly where, as here, an officer has no partner who might keep watch on the passengers while another officer attends to the driving." *Id.* at 610. The court explained further that "[t]he Fourth Amendment was surely not intended to stand for the proposition that police officers must either abandon civilians on highways at night or transport them at the risk of personal safety, rather than transport them at reduced risk of personal safety by first subjecting them to a frisk for weapons." *Id.* In support of its decision, the Michigan court cited with approval two cases from other jurisdictions where similar factual situations were presented, *People v. Coleman*, 24 N.Y.2d 1005, 302 N.Y.S.2d 831, 250 N.E.2d 237 (1969), and *Commonwealth v. Rehmeyer*, 349 Pa.Super. 176, 502 A.2d 1332 (1985).

Similarly, in *Williams v. State*, 403 So.2d 453 (Fla.Dist.Ct.App.1981), where a defendant was subjected to a pat-down search prior to being driven to the police station in a police car, the court held that "[t]he officer was not required to gamble his life by placing appellant in the patrol car with him without the precaution of a pat down for weapons." *Id.* at 456. The court further explained that

> "[t]his was true even though appellant appeared cooperative and voluntarily accompanied the officer. A number of decisions support the right of a peace officer to conduct a pat-down search for weapons, for protection of the officer, prior to placing a person into a police vehicle." *Id.*

The primary case relied upon for the contrary position is *People v. Scott*, 16 Cal.3d 242, 128 Cal.Rptr. 39, 546 P.2d 327, 332–33 (1976), which held that pat-down searches conducted prior to giving a person a ride in a police vehicle would only be valid if the officer informed the person that he has a right to refuse the ride but that if he accepts it he will be subject to a pat-down search for weapons. However, the holding in that case has since been eroded by the decision of *People v. Tobin*, 219 Cal.App.3d 634, 269 Cal.Rptr. 81 (Cal.Dist.Ct.App.1990) which, on facts similar to those presented in the case now before us, distinguished the *Scott* decision.

In *Tobin*, a police officer stopped a vehicle for a traffic violation. After further investigation it was determined that the vehicle had a false registration, that the driver was driving on a suspended license and that the two other passengers in the car, including the defendant, Tobin, did not have driver's licenses.[1] As a result, the car had to be towed and impounded, which was explained to the two passengers in the car. The police officer offered to call a friend to pick up the two passengers and an arrangement was later made that a friend would pick the passengers up at a nearby restaurant. Since it would have been extremely unsafe for the men to walk to the restaurant, the police officer offered the men a ride. No one objected to the ride. The police officer then explained that they would have to be pat-down searched for weapons prior to being transported. No one declined the pat-down search.

The California court concluded, based on those facts, that the police officer had a duty "to remove appellant and his companions from a position which was undeniably dangerous to themselves and to other members of the public." *Tobin*, 269 Cal.Rptr. at 84. The court further explained that "the need to transport a person in a police vehicle in itself is an *exigency* which justifies a pat-search for weapons." *Id.* at 85. (Emphasis added.) As a result, the court held that "the exigency which existed and the need for public safety

---

1. Although our decision must be confined to the evidence before the trial justice at the suppression hearing, it is interesting to note that at the trial on the merits, Martin testified that, as in *Tobin*, the license plate on Santurri's car did not belong on that particular vehicle.

supported the officer's conducting a minimally intrusive patdown search of appellants outer clothing." *Id.*

We are persuaded by the rationales utilized in the decisions of our sister state courts as well as by the circumstances presented in the case now before us, and we conclude that Martin was fully justified in conducting a pat-down search of the defendant prior to placing him in the police vehicle. At the time of the stop, it was 1:30 in the morning, the defendant's associate, Santurri, had informed the police that the defendant was too intoxicated to ride his bicycle, and he had no means of getting home other than by riding his bicycle because it was too far to walk and there was no indication in the record that there was any place nearby from which the defendant could call someone to come and pick him up. Allowing the defendant to walk and push his bicycle or to ride his bicycle home from the Cranston Street area where the stop had occurred at that late hour and in the defendant's inebriated condition would have seriously endangered not only the defendant but the other travelers who could have been driving in that area at that time. Officer Martin was confronted by an exigent situation and his response thereto did not violate the defendant's Fourth Amendment rights.

We note that the defendant at no time ever indicated that he objected to Officer Martin's offer to have him driven home or that he did not want to ride with the police, nor did he object to the officer's warning that he would have to be searched before getting into the police vehicle. In fact, when the casual patdown search first began, it coincided with the defendant's volunteering the fact of his possession of cocaine, which Martin testified he never would have discovered if the defendant had not told him about it. Accordingly, under these facts, we cannot say that the pat-down search was unlawful or that the cocaine should be suppressed. The motion justice did not err in denying the motion to suppress.

## II

### Motion In Limine

The defendant's last claim of error is that the motion justice erred in denying the defendant's motion in limine to prohibit the state from introducing, for the purposes of impeachment, evidence of the defendant's fourteen-year-old convictions for possession of burglary tools, breaking and entering and possession of marijuana. We disagree. It is within the discretion of the motion justice to determine whether prior convictions are admissible for the purposes of impeachment. G.L.1956 § 9–17–15; R.I.R.Evid. 609. Moreover, pursuant to Rule 609, "the determination of what is remote so as to create undue prejudice in a particular case remains an issue properly left to the discretion of the trial justice." *State v. Simpson,* 606 A.2d 677, 680 (R.I.1992). Our thorough examination of the suppression hearing record discloses nothing to suggest that the motion justice abused that discretion.

Accordingly, for all the foregoing reasons, the defendant's appeal is denied and dismissed. The judgment of conviction appealed from is affirmed, and the papers in this case are remanded to the Superior Court.