STATE

v.

Louise ROUSSELL.

No. 99–504–C.A.

Supreme Court of Rhode Island.

May 11, 2001.

Aaron Weisman, Esq., Assistant Attorney General, for Plaintiff.

Paula Rosin/Paula Lynch Hardiman (Asst. Public Defender), for Defendant.

Present LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The state has invoked the community-caretaking functions of police officers to justify a state trooper's opening of the defendant's car door that led to her conviction in this case. The defendant, Louise Roussell, appeals from a judgment of conviction following a jury trial in Superior Court. The jury found her guilty of operating a vehicle while under the influence of alcohol in violation of G.L.1956 § 31–27–2. A single justice of this Court directed the defendant to show cause why the issues raised in her appeal should not be summarily decided. Because she has not done so, we proceed to decide her appeal at this time.

The defendant filed a pretrial motion to suppress the field sobriety and breath-test results that led to her conviction. She contended that there was no probable cause to search her or her automobile. Pursuant to the federal and state constitutional prohibitions against unreasonable searches and seizures, she argued that any evidence seized as a result of the allegedly unlawful search should have been suppressed. The court denied the motion and then the jury convicted her, based upon the relevant facts set forth below.

On October 30, 1998, a state trooper conducted a motor-vehicle stop on Route 24 in Tiverton, Rhode Island. While attending to this task, the officer activated the emergency lights on his marked cruiser. As he walked back to his cruiser, he noticed a red automobile, traveling at the same speed as the traffic, driving in the breakdown lane towards his cruiser. He did not observe any signs that the fast-approaching car was in distress. He noted that the car did not have its hazard lights flashing and there was no smoke coming from it. Believing that the car might strike the rear of his cruiser, the trooper quickly positioned himself—for his own protection—between his cruiser and the vehicle he had stopped. The oncoming car "slowed down some" and then stopped abruptly about ten feet from the rear of his cruiser. The defendant was driving this car.

The defendant testified that she was forced into the breakdown lane after a van came to a halt in front of her automobile. She explained that, after the van stopped, she pulled over into the breakdown lane to avoid hitting it. She also stated that she saw the state trooper in the breakdown lane and continued to travel in that lane to let him know what she was doing. She alleged that she came to an abrupt stop because her brakes were not working that well.

After the car stopped in the breakdown lane, the trooper approached it from the passenger side. He could not approach from the driver's side where defendant sat, because part of the car protruded into the lane of travel. He then opened the passenger-side door and observed defendant in the driver's seat. He detected "a moderate odor of alcohol," observed that defendant's speech was slurred, and noted that her eyes were watery and bloodshot. Believing that she was under the influence of alcohol, he asked her to get out of the car. She did so, and the officer noticed that she appeared to have difficulty standing, that she was swaying, and that she had to place her hands on the car to steady herself. The defendant explained that she placed both of her hands on the car because that is what she believed she was supposed to do. Based upon his observations of defendant, the trooper asked defendant to submit to several field sobriety tests, which she failed to pass. He then placed her under arrest.

At the police barracks, defendant voluntarily submitted to a Breathalyzer test. On appeal defendant asserts only that the trial justice erred in denying her motion to suppress the results of the field sobriety and Breathalyzer tests. She suggests that the trooper lacked probable cause to open her car door, that the evidence seized thereafter was the product of an unlawful search, and that, therefore, it should have been suppressed. She contends that the trooper violated her state and federal constitutional rights by opening the car door and by intruding "into a place where she had a reasonable expectation of privacy." The defendant relies upon *State v. James,* 977 P.2d 489 (Utah Ct.App.1999), to support her claim that her motion to suppress should have been granted, but her reliance

is misplaced. In fact, the Supreme Court of Utah reversed that case and held in *State v. James*, 13 P.3d 576, 579–80 (Utah 2000), that the trooper's opening of the passenger door of the defendant's truck was within his authority to investigate a report of the defendant's reckless driving and did not, therefore, violate the Fourth Amendment's prohibition against unreasonable searches. *See also Maryland v. Wilson*, 519 U.S. 408, 412–15, 117 S.Ct. 882, 885–86, 137 L.Ed.2d 41, 46–49 (1997) (extending the rule in *Mimms* to apply to passengers of a lawfully stopped vehicle); *Pennsylvania v. Mimms*, 434 U.S. 106, 110–11, 98 S.Ct. 330, 333–34, 54 L.Ed.2d 331, 336–37 (1977) (holding that, owing to inherent safety concerns and the limited nature of the intrusion, officers may order the driver of a lawfully stopped vehicle to leave the vehicle during the course of the investigation).

The state maintains that the trooper's actions were proper because his reason for opening defendant's car door was "not to ferret out potential criminal activity, but rather * * * to determine what crises prompted defendant to so abruptly approach Trooper Allen's marked [with overhead lights activated] cruiser in the breakdown lane." In fact, the trooper testified that at the time he opened the door, he "didn't know if it was an emergency [or whether the defendant had] been a victim of a crime." Following the teaching of the United States Supreme Court in *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 715 (1973), the state contends the trooper's actions were in accordance with his "community caretaking functions," and therefore did not violate the defendant's constitutional rights.

When we review a trial court's decision on a motion to suppress evidence seized after a police search, "deference is given to the [factual] findings of the trial justice, and those findings shall not be disturbed unless they are clearly erroneous." *State v. Briggs*, 756 A.2d 731, 741 (R.I.2000) (quoting *State v. Ortiz*, 609 A.2d 921, 925 (R.I.1992)). The trial justice found that the state trooper had legitimate reasons to open defendant's car door. First, by driving in the breakdown lane, defendant appeared to have violated the law. Second, in light of the car's abrupt stop a few scant feet from the officer's cruiser at a place where the car was protruding into the lane of travel, the officer was entitled to suspect that the driver may have been in some sort of trouble and in need of the officer's assistance. Given the fact that the officer observed defendant driving in the breakdown lane at a high rate of speed, without any hazard lights; that her car came to an abrupt stop approximately ten feet from the officer's patrol cruiser; and that her stopped car was then partly protruding into the travel lane—we hold that the trooper had reasonable grounds to suspect that something was sufficiently amiss to warrant further investigation and inquiry, not only to protect his own safety, but also the safety of defendant and the other drivers on this highway. Thus, the trial justice's conclusion that the trooper's actions in opening the car door were justified under *Cady*'s community-caretaking doctrine because they did not constitute an unreasonable search in violation of the Fourth Amendment was not clearly erroneous.

As this Court stated in *State v. Cook*, 440 A.2d 137, 139 (R.I.1982):

"[O]ftentimes municipal and state police are called upon to perform 'community caretaking functions' that have nothing to do with the apprehension and conviction of alleged criminals. *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 714–15

(1973). Any police officer at any given time may perform the responsibilities of the office by acting as a domestic-relations counselor in an attempt to reconcile two belligerent spouses who at some prior time had solemnly promised to love and honor each other, or as a midwife to a newcomer to this planet who cannot delay his or her appearance until the cruiser makes it to the hospital, or as a sympathetic emissary who has the unpleasant task of informing some citizen of the loss of a loved one, or even as a taker of measurements or the preparer of accident reports that may prove of value solely to some insurance adjuster. The incidents to which we have just alluded are but a few of the many varied daily tasks that may be performed by anyone who joins a police department."

More recently, in *State v. Lombardi,* 727 A.2d 670, 674 (R.I.1999), we affirmed the trial court's denial of a motion to suppress the fruits of a patdown search of the defendant that the police conducted before providing the defendant with a ride home, stating:

"On the particular facts present in this case, we believe that the slight intrusion involved here [conducting a patdown frisk of defendant before giving him a ride home in cruiser] is not the sort of arbitrary interference by a law officer that the Fourth Amendment condemns. This is not a true *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) bulging-pocket-type intrusion. The police officer here was not looking to arrest or charge the defendant, he was simply trying to assist the defendant in getting to his home which was some miles away."

Having observed the defendant abruptly pull up her vehicle behind his marked cruiser after traveling in the breakdown lane, we hold that the trooper acted reasonably under the community-caretaking doctrine when he opened the defendant's passenger-side door and "asked her what was the matter." Consequently, the Superior Court properly denied defendant's motion to suppress.

For these reasons, we deny the defendant's appeal and affirm the judgment of conviction.

Chief Justice WILLIAMS did not participate.