**UNITED STATES of America, Appellee,**

v.

**Francis Abu ABOKHAI, Appellant.**

**No. 86–1906.**

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1987.

Decided Sept. 25, 1987.

Rehearing Denied Oct. 30, 1987.

Mark T. Bobak, St. Louis, Mo., for appellant.

Frederick J. Dana, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ROSS *, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

ROSS, Senior Circuit Judge.

Francis Abu Abokhai appeals from a jury verdict finding him guilty of possession of and intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (1982). The district court[1] imposed a five-year sentence to be followed by a parole term of three years. On appeal, Abokhai argues that the district court erred in failing to sustain his motion to suppress evidence obtained as a result of a search and seizure conducted without a warrant and without probable cause in violation of his fourth amendment rights. Abokhai, a Nigerian citizen, also appeals from his conviction of unlawful reentry of a deported alien into the United States, 8 U.S.C. § 1326 (1982), for which he received a two-year sentence to run concurrent with the five-year term of imprisonment, 635 F.Supp. 845. On appeal Abokhai argues that his conviction of unlawful reentry was not supported by sufficient evidence. For

---

* The Honorable Donald R. Ross assumed senior status on June 13, 1987.

1. The Honorable George F. Gunn, United States District Judge for the Eastern District of Missouri.

the reasons set forth below, we affirm the district court's decision.

## I.

On February 9, 1986 at approximately 7:00 p.m., St. Peters, Missouri police officer Lonnie Nasalroad observed appellant Abokhai and a companion, Michael Worthy, walking south of Highway 70 on Jungerman Road toward a Texaco gasoline station and convenience store. Sergeant Nasalroad testified that he observed the two individuals approach the convenience store "acting very suspicious, watching the lot, people coming and leaving the lot." Furthermore, Sergeant Nasalroad observed that the two were wearing only light jackets which he considered to be unusual given that it was very cold that evening.[2] Sergeant Nasalroad was particularly interested in the two men's behavior because he was aware that a nearby Texaco station had been the object of an armed robbery only days before. However, Nasalroad knew that neither of these men fit the description of the suspects in that crime since the suspects were white males and Abokhai and Worthy were black.

After they entered the convenience store, Nasalroad observed the individuals walking around in the back area of the store, suspiciously observing those entering and leaving the store and parking lot. The two men then made a purchase and left. Upon exiting, the two men proceeded in the opposite direction from which they had previously come.

Nasalroad, who was off-duty and not in a marked police vehicle, flagged a marked patrol car that was parked in a lot directly across from the Texaco station. Sergeant Gary Ruebling of the St. Peters Police Department responded to the call and began observing the Texaco station while the suspects were still inside. As the two individuals exited the store, Ruebling drove his car toward them, stopped, got out and identified himself as a police officer. He was then joined by Nasalroad who also identified himself as an officer.

The two suspects were then asked for identification and their destination. The appellant and Worthy told the officers their names, but neither was able to produce a driver's license or any other type of identification. Abokhai told Sergeant Ruebling that the gold-colored vehicle which he and Worthy were driving had broken down on Highway 70 and that they had walked to the gas station to buy motor oil. Initially, Abokhai stated that he owned the disabled vehicle, but subsequently claimed that he did not know who owned it. Abokahi then stated that he and Worthy had borrowed the car from a friend and that they were en route to St. Louis with a third party who was still with the car on the highway. Abokhai did not know the make or model of the car, nor could he explain why he and Worthy were walking south from the gas station when their car was to the north. At some point during the questioning, Abokhai asked the officers to drive him back to his car. The questioning continued during which time a consensual search of the brown bag carried by Worthy revealed the two had purchased oil from the gas station. After the officers obtained Abokhai's and Worthy's dates of birth, Sergeant Ruebling returned to his car and requested a computer check on both men. He also radioed a request to another officer to locate the disabled car on the highway.

After approximately ten minutes from the time of the initial stop, the officers decided to place Abokhai and Worthy inside the police car while the computer check was in progress in order to stay warm. Before doing so, Sergeant Nasalroad conducted a pat down search on the outer clothing of Abokhai and Worthy and discovered a fully loaded .380 caliber ammunition clip and approximately $2300 in cash in appellant's pocket. A further search also revealed a small plastic packet of cocaine in Worthy's jacket pocket. Appellant and Worthy were handcuffed, placed under arrest and were advised of their constitution-

---

**2.** Conflicting testimony indicates that the temperature was somewhere between 45° and 30° that evening.

al rights. Sergeant Ruebling then radioed a second request to locate the disabled car, this time to search the car for a gun.

Officer Duncan of the St. Peters Police Department located the car and shined his flashlight through the window looking for the third party with whom appellant said he was traveling. Although Duncan did not see another person inside the car, he did see two brown bags on the floor behind the driver's seat. One of the bags contained an open Girl Scout cookie box in which the officer saw a large number of clear plastic bags which contained a white powdery substance that he suspected was cocaine. At this point, Duncan entered the unlocked car and found a .380 caliber semi-automatic pistol without an ammunition clip and three airline ticket stubs in the glove compartment. The ticket stubs indicated that appellant and "R. Clark" (the owner of the disabled car) had just returned from a one day trip to Miami, Florida.

Abokhai was charged with possession and intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).

## II.

Appellant Abokhai contends that both the initial stop and subsequent search of his person amounted to an unreasonable search and seizure violative of the fourth amendment and that any evidence seized as a result of the search should have been suppressed. The government, on the other hand, argues that the stop and frisk were valid as an investigative stop under the doctrine of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

It is well established that under *Terry* "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Id.* at 22, 88 S.Ct. at 1880. Briefly detaining a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information is considered an essential ingredient of good police work. *Adams v.*

*Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1922–23, 32 L.Ed.2d 612 (1972).

Investigative stops, however, are considered "seizures" sufficient to invoke fourth amendment safeguards and as such "must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity." *Reid v. Georgia,* 448 U.S. 438, 440, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980); *Terry, supra,* 392 U.S. at 21, 88 S.Ct. at 1879–80. To be reasonable, the suspicion must be more than an "inchoate and unparticularized suspicion or 'hunch,'" *Terry, supra,* 392 U.S. at 27, 88 S.Ct. at 1883. The Court in *Terry* established a dual inquiry for evaluating the reasonableness of an investigative stop. The reviewing court must determine first "whether the officer's action was justified at its inception," and second, whether the officer's action was "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 20, 88 S.Ct. at 1879.

On appeal, Abokhai first argues that the initial stop and detention were conducted without a reasonable and articulable suspicion that he was engaged in criminal activity. In our determination of whether the officers' observations provided the requisite suspicion to justify an investigatory stop, we view the information available to the detaining officers as a whole, not as discrete and disconnected occurrences. *United States v. Poitier,* 818 F.2d 679, 683 (8th Cir.1987). Furthermore, the facts known to the officers must be assessed in light of the officers' experience and expertise, for police officers are "trained and experienced in discerning in ostensibly innocuous behavior the indicia of [criminal activity]." *United States v. Wallraff,* 705 F.2d 980, 988 (8th Cir.1983) quoting *United States v. Forero-Rincon,* 626 F.2d 218, 222 (2d Cir.1980). "[C]onduct which would be wholly innocent to the untrained observer," *United States v. Mendenhall,* 446 U.S. 544, 563, 100 S.Ct. 1870, 1882, 64 L.Ed.2d 497 (1980) quoting *Brown v. Texas,* 443 U.S. 47, 52 n. 2, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979) might be considered significant to a

trained and experienced criminal investigator.

Here, Sergeant Nasalroad, an officer with seventeen years experience, observed the two men approaching a Texaco station on foot after dark. As Sargeant Nasalroad testified at the suppression hearing, his observations were particularly heightened because he was aware that a nearby Texaco station had been the object of an armed robbery just several days before. Sergeant Nasalroad further testified that the two individuals began acting suspiciously once inside the store. The two men appeared to be surveilling people entering and leaving the store and to be watching for any activity in the parking lot. Then, when the men left the store, they proceeded in the opposite direction from which they had previously come.

■ Abokhai argues that the activities observed by the officers were not sufficient to create a reasonable suspicion that he and Worthy had been or were about to be engaged in criminal activity. We disagree with appellant's assertion. Although viewed individually the factors relied upon by the officers might appear innocent, taken together and viewed through the eyes of trained and experienced police officers, the circumstances supported a reasonable suspicion that criminal activity was afoot.

■ Furthermore, the initial investigative stop was clearly only minimally intrusive. It essentially was no more than an on the street encounter confined to the spot where Abokhai and Worthy were stopped. At no time was appellant physically restrained. The officers did not display their weapons and the detention and inquiry were brief and did not involve questions beyond a request for identification and an explanation of their presence. There was no suggestion that the officers intimidated or harassed Abokhai or his companion. We conclude that the officers could, as a matter of law, have reasonably suspected Abokhai on the basis of what was observed.

Abokhai next argues that the subsequent pat down search during which the ammunition clip was discovered was not justified because the officers had no reasonable suspicion that appellant was armed and dangerous.

In *Terry*, the Court recognized that an officer making a reasonable investigative stop should not be denied the opportunity to protect himself from attack by a hostile suspect. "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," he may conduct a limited protective search for concealed weapons. *Terry, supra,* 392 U.S. at 24, 88 S.Ct. at 1881. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams, supra,* 407 U.S. at 146, 92 S.Ct. at 1923. The officer need not be absolutely certain that the individual is armed, rather the issue in determining the legitimacy of the search is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry, supra,* 392 U.S. at 27, 88 S.Ct. at 1883; *United States v. Flett,* 806 F.2d 823, 828 (8th Cir.1986).

■ In the case before us, Officers Nasalroad and Ruebling had reasonable cause to believe that placing Abokhai in the back seat of the patrol car presented a potential danger to the officers. While the officers upon initial approach had no definite reason to believe that Abokhai was dangerous, the circumstances facing the officers at the time of the pat down, in particular the equivocation of Abokhai's story, the recent armed robbery in the area, the possibility of a third person involved and unaccounted for, as well as the close proximity and limited observation of the suspect in the back seat of the patrol car all presented specific and articulable hazards which, coupled with reasonable inferences therefrom, provided sufficient justification for the officers to conduct a self-protective pat down search of appellant. We believe that viewed through the eyes of a cautious and experienced police officer, the actions of Ruebling and Nasalroad in conducting a

protective search before placing him in the officer's patrol car was a reasonable precaution taken to protect the officers' safety. The scope of the search was properly limited to a pat down of the appellant's outer clothing and as such was sufficiently related to the protective function of the *Terry* rule, i.e., the discovery of weapons which might be used in an assault on the officers.

Based on the above analysis we conclude that sufficient underlying evidence of criminal activity existed to support the district court's decision that the motion to suppress evidence obtained as a result of the *Terry* stop should be denied.

We have also considered the other arguments raised by Abokhai on appeal, including his assertion that the district court's finding that appellant had reentered the United States illegally was based on insufficient evidence. After a review of the record and the briefs of the parties we find that these arguments are without merit.