# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

——————————

No. 98-1361MN

——————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| Michael Deshawne Glenn, also known | * | |
| as George Loper, | * | |
| | * | |
| Appellant. | * | |

——————————

Submitted: June 9, 1998
Filed: August 27, 1998

——————————

Before FAGG, BRIGHT, and BEAM, Circuit Judges.

——————————

FAGG, Circuit Judge.

Following his conviction for being a felon in possession of a firearm, Michael Deshawne Glenn appeals the district court's denial of Glenn's motion to suppress. We affirm.

On June 2, 1997, at about 5:30 p.m., state trooper John Thompson stopped Glenn on the interstate in Minneapolis, Minnesota, for driving with a cracked

windshield and a broken taillight. When Thompson approached Glenn's vehicle, Glenn immediately and repeatedly apologized. Thompson asked Glenn for a driver's license and proof of insurance. Glenn said he did not have his driver's license, which Thompson interpreted to mean Glenn did not have his license with him. Glenn also failed to produce proof of insurance. Glenn did, however, give Thompson a state welfare identification card containing his name and photograph. Thompson recognized Glenn's name from Thompson's former employment with an area jail, but could not recall the nature of Glenn's offense. Because the card Glenn provided was insufficient to identify him for purposes of the traffic stop, Thompson asked Glenn to come back to his patrol car so Thompson could access Glenn's driving record on Thompson's computer.

When Glenn and Thompson reached the patrol car, Thompson searched Glenn for weapons before placing him in the back seat. During this search, Thompson found a loaded semi-automatic handgun in Glenn's pants pocket. Thompson then arrested Glenn for carrying a concealed weapon and handcuffed him. Thompson also took out Glenn's wallet to locate additional identification and found a driver's license with both the name "George Loper" and Glenn's photograph. After Thompson placed Glenn in the back of the patrol car and began asking routine identification questions, Glenn volunteered that he had a felony record. Thompson then remembered Glenn had been at the jail for a drive-by shooting. Thompson ran a computer check on Glenn and learned Glenn did not have a valid license.

Glenn was charged with being a felon in possession of a firearm. See 18 U.S.C. § 922(g) (1994). Glenn moved to suppress the handgun, contending the pat-down search violated his Fourth Amendment rights. The magistrate judge recommended denial of the motion to suppress because the handgun would inevitably have been discovered. According to the magistrate judge, once Thompson learned Glenn did not have a valid driver's license, Thompson would have arrested Glenn for that offense and searched Glenn incident to the arrest. The district court denied the motion to suppress

on the basis that the search was reasonable. Glenn then entered a conditional guilty plea, reserving his right to appeal the district court's ruling on his suppression motion.

On appeal, Glenn does not contest the traffic stop's validity, Thompson's request that he step out of his vehicle, or Glenn's detention for a computer check of his license. Glenn contends only that the motion to suppress should have been granted because there was no reasonable, articulable suspicion sufficient to justify the pat-down search and because the gun would not inevitably have been discovered. We review the facts supporting the district court's denial of the motion to suppress for clear error and review de novo the legal conclusions based on those facts. See Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Cunningham, 133 F.3d 1070, 1072 (8th Cir.), cert. denied, 118 S. Ct. 1823 (1998).

We agree with Glenn that the reasonable, articulable suspicion needed to justify the pat-down search is absent in this case. The United States Supreme Court has held a warrantless pat-down search for weapons is permissible when there are "specific and articulable facts which, taken together with rational inferences from those facts," would lead a police officer reasonably to believe the suspect is "armed and presently dangerous to the officer or to others." Terry v. Ohio, 392 U.S. 1, 21 & 24 (1968); see United States v. Menard, 95 F.3d 9, 10-11 (8th Cir. 1996). To decide whether there is a reasonable, articulable suspicion that a suspect is armed and presently dangerous, we consider the totality of circumstances known to the officer at the time of the search. See Menard, 95 F.3d at 11-12; United States v. Abokhai, 829 F.2d 666, 670 (8th Cir. 1987).

At the time of the search in this case, Thompson knew he could only ticket Glenn for the equipment violations that initially prompted the traffic stop. Additionally, Thompson testified he could not arrest Glenn for driving without his license in his possession. Thompson also knew that Glenn apologized repeatedly when Thompson approached Glenn's car and was a former jail detainee. Because Thompson did not

recall the violent nature of Glenn's earlier offense until after he searched Glenn, Thompson's recollection of Glenn as a former jail detainee provided no factual basis for believing Glenn was dangerous and might be armed at the time Thompson conducted the search. Cf. United States v. Woodall, 938 F.2d 834, 837 (8th Cir. 1991) (stating officer had reasonable suspicion sufficient to search driver during routine traffic stop because officer recognized driver as drug trafficker and knew drug traffickers often carried weapons). Indeed, Thompson testified that Glenn's behavior did not cause him to fear for his safety and that he had no reason to believe Glenn had a gun. Instead, Thompson testified he searched Glenn solely because this was his routine practice when placing drivers in the back seat of his car during traffic stops. In these circumstances, we conclude Thompson lacked a reasonable, articulable suspicion that Glenn was armed and dangerous at the time of the search. Cf. Menard, 95 F.3d at 10-11 (finding reasonable, articulable suspicion because officer was outnumbered by vehicle's occupants, officer recognized one passenger as drug trafficker found to be carrying a weapon, and stop occurred late at night on deserted road); Abokhai, 829 F.2d at 670 (finding reasonable, articulable suspicion because of Abokhai's equivocal responses to questions, recent armed robbery in the area, possible presence of unaccounted for third person, and Abokhai's suspicious behavior).

Despite the absence of any suspicion that Glenn was armed and presently dangerous, the Government would have us hold Thompson's decision to place Glenn in his patrol car during this routine stop was sufficient to justify the pat-down search solely because this decision placed Thompson in a potentially vulnerable position. The Government's argument is contrary to Terry's reasonable suspicion requirement and would permit law enforcement officers to pat down all traffic offenders simply by choosing to place them in the back seat of patrol cars during traffic stops. An officer's decision to place a traffic offender in the back of a patrol car does not create a reasonable, articulable suspicion to justify a pat-down search that the circumstances would not otherwise allow. Cf. Abokhai, 829 F.2d at 670 (holding pat-down search of Abokhai before placing him in back seat of patrol car permissible because officers

-4-

had reasonable suspicion Abokhai was armed and presently dangerous based on totality of circumstances).

Although the search was not justified at the time, the gun need not be suppressed because Thompson would have inevitably discovered it in a search incident to Glenn's arrest for driving without a license. Illegally seized evidence may be admitted if the Government proves "by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." United States v. Conner, 127 F.3d 663, 667 (8th Cir. 1997); see Nix v. Williams, 467 U.S. 431, 444 & 448 (1984). Here, the Government met its burden of proof on both parts of this test.

When the search took place in this case, the record shows Thompson was in the process of identifying Glenn as a permissible part of the initial traffic stop. See United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993) (finding driver's continued detention permissible because detention was reasonably related in scope to circumstances that initially prompted traffic stop). The record also shows Thompson would have completed the license check even if he had not found a weapon. The license check revealed Glenn was operating a vehicle without a driver's license, a misdemeanor offense for which he could be arrested under Minnesota law. See Minn. Stat. Ann. § 171.02 subd. 1 (West Supp. 1998); Minn. Stat. Ann. § 171.241 (West 1986); Minn. Stat. Ann. § 609.03 subd. 3 (West 1987). Minnesota officers must arrest for misdemeanors when "it reasonably appears to the officer that arrest or detention is necessary to prevent . . . further criminal conduct." Minn. R. Crim. P. 6.01(1)(a). We believe there is a reasonable probability Thompson would have arrested Glenn for operating a vehicle without a license because the parties were on an interstate highway and Glenn had no apparent means of leaving the scene without driving his vehicle and thus perpetuating the offense. Once arrested, Thompson would have searched Glenn

incident to that lawful arrest, and the handgun would have been discovered.  See Conrod v. Davis, 120 F.3d 92, 96 (8th Cir. 1997), cert. denied, 118 S. Ct. 1531 (1998).

Although Thompson lacked a reasonable, articulable suspicion to justify the pat-down search conducted before placing Glenn in the back of his patrol car, we conclude Thompson would inevitably have discovered the handgun once he performed the license check and arrested Glenn.  Thus, the district court properly denied Glenn's motion to suppress.  We affirm Glenn's conviction.

BEAM, Circuit Judge, concurring.

I concur in the result reached by the court and I agree that Glenn's weapon would have been "inevitably discovered."  However, I would not reach that issue because I believe that Officer Thompson did not violate Glenn's Fourth Amendment rights in the first instance.  We deal here with a protective frisk described in Terry v. Ohio, 392 U.S. 1, 88 (1968).  This security "pat down" was conducted just before Glenn, a legally detained traffic violator, was placed in the rear seat of the police vehicle so that Thompson could turn his attention toward checking Glenn's licenses, registrations, warrants and other relevant information.

While the constitutional analysis under Terry is necessarily fact specific, it is essentially an objective test.  Cf.  Klingler v. United States, 409 F.2d 299, 304 (8th Cir. 1969).  It is my view that anytime the circumstances surrounding a traffic stop allow, as here, the placing of a detainee inside a police car with a lone officer, the so-called Terry doctrine permits an out-side-the-clothing security search.  Thus, under the facts of this case, a  reasonable police officer was constitutionally entitled to carry out the protective frisk conducted by Thompson.  Accordingly, I would affirm Glenn's conviction on that basis.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.