# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3015
_____

United States of America,     *
     *
     Appellee,     *
     *   Appeal from the United States
     v.     *   District Court for the District
     *   of South Dakota.
Hector G. Alvarez-Gonzalez,     *
     *
     Appellant.     *

_____

Submitted: February 11, 2003

Filed: February 26, 2003
_____

Before BOWMAN, FAGG, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

FAGG, Circuit Judge.

Hector G. Alvarez-Gonzalez was pulled over by South Dakota Highway Patrol Trooper Matt Oxner for having a rosary with crucifix dangling from his rear-view mirror in violation of South Dakota Codified Law § 32-15-6 (Michie 2002). After Alvarez-Gonzalez produced his Washington state driver's license, Oxner asked Alvarez-Gonzalez to accompany him to his patrol car so Oxner could verify the license and write a warning ticket for the dangling rosary. Oxner called in the details from Alvarez-Gonzalez's license over the radio. Before receiving a response, Oxner began questioning Alvarez-Gonzalez about his immigration status because Alvarez-Gonzalez had some difficulty speaking English. Oxner also questioned Alvarez-

Gonzalez about the presence of drugs in his vehicle and administered two field sobriety tests. The state radio dispatcher informed Oxner that no records could be found to support the validity of Alvarez-Gonzalez's driver's license.

Oxner's supervisor, Sergeant Englund, then arrived. The police officers requested Alvarez-Gonzalez's social security number, learned he also had an Illinois driver's license, and called the state radio dispatcher to provide the social security number and verify the license. In the meantime, Oxner called Border Patrol and spoke with Agent Soland. Soland spoke with Alvarez-Gonzalez over the telephone in Spanish, learning he had entered the United States on a visitor's visa in 1998. While Alvarez-Gonzalez was speaking with Soland, the state dispatcher informed Oxner that Alvarez-Gonzalez's identity could not be verified after the dispatcher "checked with the national database, with NCIC, and checked every aspect they could." Soland then told Oxner Alvarez-Gonzalez had entered the country as a visitor in 1998 and, because a visitor's visa is valid for a maximum of twelve months, Alvarez-Gonzalez was in the country illegally. Soland asked Oxner to detain Alvarez-Gonzalez for the immigration violation. Englund then read Alvarez-Gonzalez his Miranda rights and asked if there were any drugs or cash in the vehicle. Alvarez-Gonzalez volunteered that there was a firearm in the vehicle.

Oxner issued a warning ticket for the dangling rosary, then Englund took Alvarez-Gonzalez to the county jail. Oxner stayed with Alvarez-Gonzalez's vehicle until the tow truck arrived. The vehicle was towed to the state Department of Transportation shop, where an inventory of the vehicle's contents was taken. During the inventory, the firearm and two loaded clips were found. Later the same day, Soland spoke with Alvarez-Gonzalez on the telephone. Because Soland was having trouble locating Alvarez-Gonzalez's records, he asked about the existence and location of a passport or visa. Alvarez-Gonzalez told Soland his passport was in his vehicle. The passport was found and Soland confirmed Alvarez-Gonzalez was in the country illegally.

The government charged Alvarez-Gonzalez with being an alien in possession of a weapon in violation of 18 U.S.C. § 922(g)(5). Before trial, Alvarez-Gonzalez moved to suppress his statements. Concluding Oxner and Englund's pre-Border Patrol call questions impermissibly exceeded the scope of the original traffic stop and violated <u>Miranda</u>, the district court[*] granted the motion to suppress concerning the statements made before the call placed to Border Patrol (although, in fact, Alvarez-Gonzalez made no incriminating statements before the call). The court also concluded that because Alvarez-Gonzalez was in custody when he spoke with Soland on the telephone and no <u>Miranda</u> warnings had been given at that point in time, the statements to Soland should be suppressed. The district court held Alvarez-Gonzalez's post-Border Patrol call statements to Englund and the firearm were admissible, however, because Alvarez-Gonzalez's detention was inevitable regardless of the immigration questioning. Although Alvarez-Gonzalez had two driver's licenses, the police could not confirm their validity. Because the officers could have lawfully arrested Alvarez-Gonzalez at the scene for driving without a valid license and displaying an invalid license, regardless of Soland's request to detain him for civil deportation proceedings, the district court held the gun found as a result of Alvarez-Gonzalez's conversation with Englund after receiving proper <u>Miranda</u> warnings was admissible in Alvarez-Gonzalez's criminal proceeding.

Alvarez-Gonzalez entered a conditional guilty plea, and now appeals the partial denial of his motion to suppress. Having reviewed the facts supporting the district court's denial for clear error and the legal conclusions based on those facts de novo, we affirm. <u>United States v. Glenn</u>, 152 F.3d 1047, 1048 (8th Cir. 1998).

---

[*]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, adopting the report and recommendation of United States Magistrate Judge John E. Simko.

Even if Oxner's and Soland's questions about Alvarez-Gonzalez's immigration status were improper, we agree with the district court that discovery of Alvarez-Gonzalez's gun and status as an illegal alien was inevitable. For the inevitable discovery doctrine to apply, there must have been a reasonable probability the evidence would have been discovered in the absence of police misconduct, and the police must have been pursing a substantial, alternative line of investigation. United States v. Boyd, 180 F.3d 967, 976 (8th Cir. 1999). Operating a vehicle without a driver's license and possessing a canceled, revoked, suspended, or fictitious driver's license are misdemeanor offenses for which a person may be arrested under South Dakota law. See S.D. Codified Laws § 32-12-22; 22-6-2(2), 32-12-67, 22-6-2(1) (Michie 1998 & 2002). "We believe there is a reasonable probability [Alvarez-Gonzalez would have at least been detained] because the parties were on an interstate highway and [Alvarez-Gonzalez] had no apparent means of leaving the scene without driving his vehicle and thus perpetuating the offense." Glenn, 152 F.3d at 1050. There is also a reasonable probability Alvarez-Gonzalez's vehicle would have been towed, rather than left on the shoulder of the interstate, and a routine inventory search of the vehicle would have been conducted. Thus, the firearm would have been inevitably discovered during an inventory search of the vehicle. Besides, Alvarez-Gonzalez's admission about the firearm was offered after police read the Miranda warnings. Further, there is a reasonable probability the officers would have continued to attempt to confirm Alvarez-Gonzalez's identity and discovered his status as an illegal alien.

Because Alvarez-Gonzalez's detention, discovery of his immigration status, and discovery of the weapon were inevitable even without the allegedly improper immigration questions, we affirm the district court's partial denial of Alvarez-Gonzalez's motion to suppress. See 8th Cir. R. 47B.

-4-

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

I respectfully dissent.

I agree that it is possible that the investigating officers in this case would have arrested Mr. Alvarez-Gonzalez because it appeared that he did not have a valid driving license, but the government's proof falls short on the pivotal question of whether it was reasonably likely that the officers would in fact have arrested him for that reason. At the suppression hearing, the officers were never asked whether they would have arrested Mr. Alvarez-Gonzalez for not having a valid license, nor was there any evidence adduced that arrests are customarily made in South Dakota in such circumstances. The result in *United States v. Glenn*, 152 F.3d 1047 (8th Cir. 1998), on which the court relies, was greatly aided by the existence of an applicable rule that required an officer to make an arrest if an arrest was " 'necessary to prevent ... further criminal conduct,' " *id.* at 1050 (quoting Minn. R. Crim. P. 6.01(1)(a)). The state points to no such rule or statute in the instant case. It is at least suggestive, moreover, that the reasons adduced for Mr. Alvarez-Gonzalez's arrest did not include the fact that he did not have a valid license.

For these reasons, I believe that the district court clearly erred in concluding that the discovery of Mr. Alvarez-Gonzalez's status was inevitable, and I would therefore reverse the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-