**UNITED STATES of America,**
**Plaintiff,**

v.

**Patrick John BERCIER, Defendant.**

**No. C4–04–27.**

United States District Court,
D. North Dakota,
Northwestern Division.

July 22, 2004.

David D. Hagler, U.S. Attorney, U.S. Attorney's Office, Bismarck, ND, for United States of America.

Richard L. Hagar, Kenner Law Firm, P.C., Minot, ND, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

HOVLAND, Chief Judge.

Before the Court is the Defendant's Motion to Suppress Evidence filed on June 3, 2004. For the reasons set forth below, the motion is denied.

## I. BACKGROUND

On Saturday, January 17, 2004, medical officials at the Belcourt Hospital notified Tammy Morin[1] that the mother of Patrick John Bercier's children had prematurely given birth to a baby girl that tested positive for methamphetamine. Given Morin's past experience with the Bercier family, Morin contacted Tribal Judge Beverly May to obtain authorization to conduct an onsite assessment and possible emergency removal of the three remaining Bercier children residing with Bercier.

Upon receiving verbal authorization from Tribal Judge May, Morin requested the assistance of Belcourt law enforcement to facilitate the visit and potential emergency removal. Officers Stacey LaRocque and Phil LaVallie accompanied Morin to the Bercier residence as requested. Both officers were aware that Patrick Bercier had two outstanding arrest warrants for contempt of court and a probation violation.

When Tammy Morin and the officers arrived at the Bercier residence, the front door was partially open. Morin knocked and Amanda Bercier, the Defendant's sister, peered through the door opening followed by Patrick John Bercier who fully opened the door. Bercier was identified by Belcourt law enforcement and was promptly arrested inside the residence. Upon entry, Officer LaRocque saw two other adult males whom he excused from the premises. Officer LaRocque also heard some noise upstairs.

Morin then notified Patrick Bercier of Tribal Judge May's authorization to remove the three children currently living with him and to place them into protective custody until the matter could be brought before the Tribal Court.

Morin identified two of the children in the immediate living room area and Bercier indicated that the youngest child was upstairs sleeping. After finding clothes

---

1. Morin serves as a licensed social worker for the Child Protection Division of Child Welfare and Family Services Office of the Turtle Mountain Agency in Belcourt, North Dakota.

for the two children, Amanda Bercier preceded Morin upstairs. A sixteen-year-old male was present and exited the premises upon Morin's arrival.

Morin opened the first bedroom door but the child was not present. Morin immediately noticed drug paraphernalia including needles, syringes and books of rolling papers. Morin called to the law enforcement officers for assistance because she feared that other people might still be present and the youngest child still had not been located. Officer LaVallie went upstairs and confirmed the presence of the drug paraphernalia and also noticed a four-inch-long pipe with both ends plugged and a green fuse protruding out of one end. Officer LaVallie called for Officer LaRocque to assist in the determination of whether a methamphetamine lab was in operation there and to assess the presence of the suspected explosive device. The room contained several items commonly used in association with drug ingestion. Officer LaRocque concluded that because the building housed three other apartments accessible by other people in this residential neighborhood, the suspected pipe bomb was an immediate danger and was promptly removed.

After securing the area and removing the explosive device, the remaining child was located. Suffering from head lice, colds, hunger and filthy diapers, all three children were immediately taken to the hospital emergency room. Patrick Bercier was taken into custody pursuant to the two Tribal arrest warrants.

The pipe bomb was later detonated by Officers Haug and Glaser of the Minot Police Department Bomb Squad. Officers Haug and Glaser accompanied Officer LaRocque back to the Bercier residence to search for any more explosive devices. While none were found, another piece of pipe consistent with the first pipe bomb was found in the residence.

## II. LEGAL ANALYSIS

■ The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The reasonableness of the search is determined "by assessing, on one hand, the degree to which it intrudes upon an individual's privacy and, on the other hand, the degree to which it is need for the promotion of legitimate governmental interests." *Wyoming v. Houghton,* 526 U.S. 295, 300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999).

■ The general rule is that the government must secure a warrant before conducting a search. *Katz v. U.S.,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); accord *U.S. v. Alberts,* 721 F.2d 636, 638 (8th Cir.1983). When an individual's home is searched without a warrant, "the burden is on those seeking [an] exemption to show the need for it." *U.S. v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951); accord *U.S. v. Selberg,* 630 F.2d 1292, 1294 (8th Cir.1980) (acknowledging the burden to establish either a consent to the search, search incident to a lawful arrest, or the hot pursuit exception).

The United States Supreme Court has established many exceptions[2] to the general rule. *Schneckloth v. Bustamonte,* 412 U.S. 218, 243, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (consent searches); *Warden v. Hayden,* 387 U.S. 294, 298–99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (exigent cir-

---

2. Other exceptions include warrantless arrests, investigatory detentions, searches of containers, inventory searches, border searches, searches at sea, "special needs," and administrative searches.

cumstances); *U.S. v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (searches incident to a valid arrest); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (seizure of items in plain view).

### A) THE DEFENDANT VOLUNTEERED CONSENT TO THE SEARCH

■ While the Fourth Amendment limits the circumstances under which the police can conduct a search, "there is nothing constitutionally suspect in a person's voluntarily allowing a search." *Schneckloth v. Bustamonte*, 412 U.S. 218, 243, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (stating that "[t]he Fourth Amendment proscribes unreasonable searches and seizures; it does not proscribe voluntary cooperation.").

■■ "[T]he question of whether a consent to search was in fact 'voluntary' or was the product of duress or coercion, expressed or implied, is a question of fact to be determined from the totality of all circumstances." *Schneckloth*, 412 U.S. at 227, 93 S.Ct. 2041. Furthermore, "[a] voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of Miranda warnings." *U.S. v. Hatten*, 68 F.3d 257, 262 (8th Cir.1995) (citing *Rhode Island v. Innis*, 446 U.S. 291, 299, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)).

■ The Eighth Circuit has established several relevant factors including both individual and environmental characteristics that may be considered in making such a determination: (1) the age of the individual giving consent; (2) the general intelligence and education of the consenting party; (3) whether the individual was under the influence of alcohol or a mind-altering substance; (4) whether the individual was informed of his right to withhold consent or of his Miranda rights prior to consent; (5) whether an individual had experienced prior arrests so that he or she was aware of the protections the legal system affords to suspected criminals; (6) the length of time the individual was detained or questioned; (7) whether the individual was physically threatened, intimidated, or punished by the police; (8) whether the individual relied upon promises or misrepresentations by the police; (9) whether the individual was in custody or under arrest when the consent was given; (10) whether the individual was in a public or secluded location; and (11) whether the individual objected to the search or passively looked on. *U.S. v. Hathcock*, 103 F.3d 715, 719 (8th Cir.1997) (citing *U.S. v. Chaidez*, 906 F.2d 377, 380 (8th Cir.1990)).

Patrick Bercier is a twenty-eight-year-old father of four children. He was on probation at the time of this arrest and it could be reasonably inferred that he was aware of his legal rights. No evidence indicates that he was intoxicated. While the officers did not read Bercier his rights, they also did not ask to search the residence for at least three reasons: (1) Bercier was immediately apprehended upon entry to the premises, (2) two of the three children were immediately located, and (3) Morin, aided by Bercier's own guidance as to the location of the third child, was the only official moving through the residence. Only when Morin requested assistance upstairs did Officer LaVallie move beyond the immediate vicinity of Bercier's arrest. Upon Officer LaVallie's return from the upstairs bedroom to confirm the presence of drug paraphernalia identified by Morin, Officer LaRocque noted that Bercier rejected Officer LaVallie's assertion that a meth lab might be operating there and volunteered his consent to a search to

prove it. No evidence or complaint of physical abuse or intimidation exists. Bercier was taken into custody at his residence and volunteered consent to confirm his claim that a meth lab was not operating in the residence.

In summary, the Defendant provided consent to search the upstairs area to both Morin and the officers on two distinct occasions: first, when he told Morin that the youngest child was upstairs sleeping, and second, when he asserted that a meth lab was not operating in the residence and told the officers to inspect the area.

B) DANGER TO THE BERCIER CHILDREN AND OFFICERS CREATED EXIGENT CIRCUMSTANCES

 "Police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Kirk v. Louisiana,* 536 U.S. 635, 638, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002). Although narrowly circumscribed, the exigent circumstance exception to the warrant requirement can "justify immediate police action without a warrant ... where lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed." *U.S. v. Francis,* 327 F.3d 729, 735 (8th Cir.2003); accord *U.S. v. Gill,* 354 F.3d 963, 969 (8th Cir.2004) (holding that a police officer's discovery of handgun visible through open window of apartment, when coupled with circumstances including defendant's presence outside the apartment in a bloody shirt, changed the nature of exigency and justified their warrantless sweep of the apartment); *U.S. v.Walsh,* 299 F.3d 729, 734 (8th Cir.2002) (finding a warrantless intrusion permissible where it was commensurate in scope with the exigency at hand).

Safety factors are also considered in determining exigency. *Francis,* 327 F.3d 729, 735; see *U.S. v. Boettger,* 71 F.3d 1410, 1415 (8th Cir.1995) (finding that the presence of explosive chemicals created safety concerns which justified the warrantless search of the apartment); *U.S. v. Antwine,* 873 F.2d 1144, 1147 (8th Cir. 1989) (finding a handgun and seizing it for the safety of children in the house did not run afoul of the Fourth Amendment).

 When officers reasonably perceive the presence of danger to victims or themselves, they may execute a protective sweep of the premises. "[A] protective sweep is not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Maryland v. Buie,* 494 U.S. 325, 337, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); *U.S. v. Boyd,* 180 F.3d 967, 976 (8th Cir.1999) (finding a protective sweep of both floors of a residence was warranted because law enforcement had no ability to determine how many other people were present).

 In the present case, several people other than the Defendant were present in the residence at the relevant times. After two men were excused from the scene, the officers heard noises from the second level. That noise warranted a protective sweep especially since the third child had not been located. A sweep of the upstairs rooms, not unlike Morin's search for the youngest child, would have reasonably yielded the same result: the discovery of the explosive device and drug paraphernalia.

 The social worker's prior dealings with the Bercier family combined with the

notification by the Belcourt hospital that Misti Bercier had given birth to a child that tested positive for illegal drugs prompted the request for law enforcement assistance to remove the remaining minor children from a dangerous environment. Upon entry to the Bercier residence, Morin's apprehensions were confirmed when she found the children naked, filthy and suffering from colds and head lice. Moreover, drug paraphernalia littered the residence and an explosive device was found sitting on a television in an upstairs bedroom. The presence of such dangerous materials easily accessible to young children combined with the obvious neglectful treatment of the children established an imminent danger to the Bercier children residing with the Defendant sufficient to create the exigent circumstances exception to the search warrant requirement.

 Even if the protective sweep was found invalid, the physical evidence was inevitably discovered incident to Morin's search for the remaining child. Moreover, the evidence would have inevitably been discovered during the search of the house after Bercier's consent was given. Under the inevitable discovery doctrine, "[i]llegally seized evidence may be admitted if the Government proves by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." U.S. v. Glenn, 152 F.3d 1047, 1049 (8th Cir.1998) (quoting U.S. v. Conner, 127 F.3d 663, 667 (8th Cir.1997)).

Here, both prongs of the doctrine are satisfied. First, the pipe bomb was found sitting on a television in an upstairs bedroom. Even a cursory glance would likely have yielded discovery of the explosive device both because it was in plain view and that the shape and appearance of the device would make it stand out in a bedroom setting.

Second, it was Morin's search for the remaining child sleeping upstairs that lead to the discovery of the evidence at issue. While Bercier provided Morin with that information, Morin would likely have searched the bedrooms absent such guidance. Based on the emergency removal authorization received from Tribal Judge May, Morin could have searched the premises until all three children were located. Further, the scope of Morin's search was naturally limited to places children of that young age would likely occupy.

In sum, the exigent circumstances exception to the search warrant requirement was met by the presence of danger to the Bercier children based on Morin's past dealings with the Bercier family plus the recent positive drug test of Misti Bercier's newborn daughter. Tribal Judge May's authorization for the emergency removal of the children evidences the urgency of the situation and imminency of probable harm to the children. That probability was further supported by the condition of the Bercier children upon entry to the residence. Morin's search for the remaining child that lead to the discovery of the explosive device was proper pursuant to the removal authorization. The device was in plain view and located in an area of the home that was a reasonable place for a child to occupy. That device threatened the lives of the children and the officers. Finally, the search was terminated after finding the children because the children required prompt medical evaluation and treatment.

## III. CONCLUSION

The Court has carefully reviewed and considered all of the evidence, testimony,

investigative reports, and exhibits that were submitted in support of the motion to suppress. The Court concludes from a review of all of the evidence, and a careful consideration of all of the relevant factors and the totality of the circumstances, that the search of the Bercier residence and the seizure of the explosive device on January 17, 2004 was proper under the Fourth Amendment. Accordingly, the Court DE-NIES the Defendant's Motion to Suppress (Docket No. 16).

IT IS SO ORDERED.