COLORADO COURT OF APPEALS                                    **2016COA119**

Court of Appeals No. 14CA0921
Jefferson County District Court No. 13CR565
Honorable Christopher C. Zenisek, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Tommy Allen Gow,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE BERGER
Román and Nieto*, JJ., concur

Announced August 25, 2016

Cynthia H. Coffman, Attorney General, Rebecca A. Adams, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Anne B. Stockham, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2015.

¶ 1    This case presents the important question of whether a police officer, consistent with the Fourth Amendment, may require a person who requests assistance to be subjected to a pat-down search for weapons before the person is allowed to enter the officer's vehicle.

¶ 2    We hold that there is no affront to the Fourth Amendment when a police officer requires a person who has voluntarily sought assistance, but whom the officer has no duty to assist, to undergo a pat-down search as a condition of entering a police vehicle, even when the officer does not have a reasonable, articulable suspicion that the person is armed and dangerous.

¶ 3    In so holding, we necessarily disagree with People v. Berdahl, 2012 COA 179, in which another division of this court held that to justify a warrantless pat-down search of an individual before allowing entry into a police vehicle, an officer must have a reasonable, articulable basis to conclude that the person is armed and dangerous.  While we give considerable deference to decisions of other divisions of this court, we are not bound by those decisions.  See e.g., People v. Frye, 2014 COA 141, ¶ 12.  Because

1

we believe that Berdahl reaches a result not required by the Fourth Amendment or any binding authority, we decline to follow it.

¶ 4    Given our holding, we reject the argument of defendant, Tommy Allen Gow, challenging the admission of evidence discovered during a pat-down search, and we affirm the judgment of conviction.

## I. Facts and Procedural History

¶ 5    A jury convicted Gow of possession of methamphetamine and possession of a schedule I controlled substance. His sole contention on appeal is that the trial court erred by denying his motion to suppress the evidence obtained during the search.

¶ 6    The arresting officer testified at the suppression hearing that at approximately 2:15 a.m., he observed Gow walking in a residential neighborhood with a box in his hands. The officer stated that, upon exiting his vehicle, he "asked [Gow] what he was up to" and that Gow told him that he had "c[o]me from his friend['s] . . . house and just bought an iPad from him for $600." The officer testified that Gow offered to produce and did produce his identification card, and that after discovering no outstanding warrants, he told Gow he was free to leave.

2

¶ 7    The officer further testified that he continued to watch Gow as Gow walked away, but he eventually decided to drive away from the area. He stated that, as he was passing Gow, Gow started waving his hands and motioning for the officer to stop and lower his window. The officer testified that Gow approached his vehicle and asked for a ride to another friend's house that was four blocks away. The officer agreed to give Gow a ride but told Gow that "[he] had to pat him down first before [he] put him in the back of [the] vehicle to insure [sic] that he didn't have any weapons or anything illegal on him." The officer testified that this was not an official "procedure" but that he wanted to ensure his safety when giving Gow a "courtesy ride."

¶ 8    The officer testified that Gow responded, "[o]kay. I don't have any weapons," and the officer did not find anything on Gow's person. The officer stated that he then asked Gow if he could look inside the box with the iPad in it to check for weapons and Gow said "sure." The officer testified that, when Gow opened the box and took the iPad out, the box dropped to the ground and two small plastic baggies fell out. He stated that Gow picked up the baggies and handed them to him and that, when asked, Gow told him they

3

contained "speed."  The officer testified that, in his experience, he suspected the baggies contained methamphetamine.

¶ 9     The officer then arrested Gow.  The substances inside the baggies later tested positive for unlawful drugs.

¶ 10    Gow's version of the encounter was substantially different.  He testified that on the night in question, he was walking away from his friend's apartment when he heard the officer "holler" at him to come over.  He stated that he asked the officer why he was "harassing" him and that the officer said there had been reports of people breaking into cars in the area.  Gow testified that the officer asked about the box in his hand and that he told him it contained an iPad.  He stated that he handed the box to the officer and that the officer then returned the box to him.

¶ 11    Gow testified that he then walked away, but that, about four to five minutes later, the officer pulled up next to him and asked to see the iPad box.  He stated that he gave the box to the officer and that two baggies fell out when it was opened.  Gow testified that he did not wave the officer down to ask for a ride, that the officer did not ask for permission to search the box, and that he did not tell the officer the baggies contained "speed."

4

¶ 12     In its oral ruling, the trial court found the officer's testimony credible and held that the second encounter was consensual because it was initiated by Gow waving down the officer and requesting a ride. The court denied the motion to suppress, concluding that the officer's pat-down search of Gow before giving him a courtesy ride did not violate the Fourth Amendment's prohibition against unreasonable searches and seizures because it was "logical . . . that one must make sure they are going to be safe in giving a ride to somebody."[1]

## II. The Fourth Amendment — General Principles

¶ 13     The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution protect individuals against unreasonable searches and seizures. People v. Brown, 217 P.3d 1252, 1255-56 (Colo. 2009).[2] "A warrantless search is presumptively invalid under the [F]ourth [A]mendment . . . , subject

---

[1] Gow does not challenge the extent of the search, arguing only that no search was constitutionally permitted. We limit our analysis accordingly. Specifically, we do not address whether it was constitutionally permissible for the officer to separately seize and search the contents of the iPad box as part of the search of Gow's person.

[2] Because Gow does not contend that the Colorado Constitution provides different or greater protection than the Fourth Amendment, we do not further address its protections.

only to a few narrow and specifically delineated exceptions." People v. Dandrea, 736 P.2d 1211, 1216 (Colo. 1987). "The constitutional test of a warrantless search ultimately is reduced to the question of whether the search was reasonable under all relevant attendant circumstances." Id.

¶ 14    Our review of a trial court's ruling on a motion to suppress is a mixed issue of law and fact. People v. Bostic, 148 P.3d 250, 254 (Colo. App. 2006). We defer to a trial court's findings of fact if they are supported by competent evidence in the record. People v. Gothard, 185 P.3d 180, 183 (Colo. 2008). However, a trial court's legal conclusions are subject to de novo review. Id.

### III.  Analysis

¶ 15    Gow does not contend that the trial court's findings of fact are not supported by the evidence at the suppression hearing, and we are bound by a trial court's findings of historical fact that find support in the record. People v. Matheny, 46 P.3d 453, 458 (Colo. 2002). Instead, Gow argues that the pat-down search, which entailed the search of the iPad box, was unconstitutional because, under Berdahl, an officer may not, in the course of providing a courtesy ride, search the individual to be transported without a

reasonable, articulable suspicion that the individual is armed and dangerous, and the officer here had no such suspicion.

¶ 16 Although the trial court did not cite Berdahl, the court's conclusion — that the officer could pat down Gow to ensure the officer's safety while giving Gow a ride — is directly at odds with Berdahl's holding that Colorado does not recognize an "officer safety exception" to the requirement that an officer have a warrant or a reasonable, articulable suspicion that an individual is armed and dangerous to lawfully conduct a pat-down search for weapons before the person enters a police vehicle.

¶ 17 While Berdahl is factually distinguishable from this case in important respects, the trial court's ruling here is impermissible under Berdahl's blanket holding that officer safety cannot justify a pat-down search in this type of situation. Thus, unless we can resolve the case on other grounds than those relied on by the trial court, we must decide whether we agree with Berdahl. See People v. Aarness, 150 P.3d 1271, 1277 (Colo. 2006) (appellate court may affirm trial court's suppression order on any ground supported by the record).

¶ 18 Although the prosecution argued in response to Gow's suppression motion that Gow had consented to the search, the trial court did not decide consent or make any factual findings on the issue because the court found that the search was justified under an officer safety rationale. Because a determination whether an individual voluntarily consented to a search must take into account the totality of the circumstances, People v. Munoz-Gutierrez, 2015 CO 9, ¶ 19, the record does not contain the factual findings necessary for us to decide whether Gow consented to the search.

¶ 19 Moreover, although we could remand the case to the trial court to make findings on consent, if the trial court found that Gow did not consent to the search, we would still then have to decide whether the search was nevertheless reasonable for officer safety purposes. Because the resolution of this appeal thus requires us to decide if the pat-down search of Gow was constitutionally justified under the circumstances as an officer safety measure, we must address Berdahl, under which the search would not be permissible.3

---

3 We do not address formal arrests because if an officer has probable cause to arrest an individual, the officer, without any

¶ 20    In Berdahl, a state trooper conducted a pat-down search of the

defendant before giving him and his girlfriend a courtesy ride to a

service station because their car had run out of gas and they were

stranded on the side of the road in "frigid" conditions.  Id. at ¶ 6.

The trooper explained that, "although he did not believe any

criminal activity had occurred, he performed the pat-down search

on [the] defendant, because '[i]t's an officer-safety practice when

you're putting someone in the back of your patrol car.'"  Id. at ¶ 7.

¶ 21    During the search, the trooper discovered unlawful drugs and

drug paraphernalia, and the defendant was arrested.  Id. at ¶¶ 8-

10.  The trial court denied the defendant's motion to suppress this

evidence, concluding that the pat-down search was constitutionally

permissible because "it was reasonable under the circumstances for

officer safety."  Id. at ¶ 13.

¶ 22    On appeal, a division of this court reversed the trial court's

ruling.  The division held that "[l]aw enforcement officers may

justifiably contact an unsuspicious person when other legitimate

official reasons exist," "[b]ut during that contact, a protective search

---

additional cause or reason, may search the individual and areas
under his control incident to the arrest.  *See e.g.*, *People v. Clouse*,
859 P.2d 228, 234 (Colo. App. 1992).

for a weapon 'is justified only when the circumstances of an otherwise valid stop provide the officer with a reasonable basis to suspect that the person with whom he is dealing may be armed and dangerous.'" Id. at ¶ 19 (quoting People v. Ratcliff, 778 P.2d 1371, 1376-77 (Colo. 1989)). The division concluded that Colorado has not recognized an "officer safety exception" to this requirement. Id. at ¶¶ 26, 29.

¶ 23    The Berdahl division relied on several out-of-state cases to support its holding. See id. at ¶ 25. The division cited United States v. Glenn, 152 F.3d 1047, 1049 (8th Cir. 1998), in which the majority of a three-judge panel held that an officer's decision to place a traffic offender in the back of a patrol car after stopping him for a traffic violation did not create a reasonable, articulable suspicion to justify a pat-down search. The majority held, however, that the weapon that was found during the pat-down search need not be suppressed because it inevitably would have been discovered incident to the offender's arrest. Id. at 1049-50. The third judge concurred in the result only, expressing the view that anytime the circumstances surrounding a traffic stop allow the placing of a detainee inside a police car with a lone officer, the Terry doctrine

10

authorizes an outside-of-the-clothing search for weapons.  Id. at 1050 (Beam, J., concurring in the result).

¶ 24    The Berdahl division also relied on State v. Brockel, 746 N.W. 2d 423 (N.D. 2008).  There, the North Dakota Supreme Court held that although North Dakota law authorized an officer to order a motorist who is stopped for a traffic violation to sit in the patrol car while the officer issues a citation, that fact does not authorize a pat-down search without a reasonable and articulable suspicion that the motorist is armed and dangerous.  Id. at 426-27.

¶ 25    The other cases on which the Berdahl division relied to support its holding, however, do not, in our view, stand for the proposition that an officer may not conduct a pat-down search of an individual before placing him in a police vehicle unless the officer reasonably believes that the individual is armed and dangerous.

¶ 26    For instance, in Wilson v. State, 745 N.E.2d 789 (Ind. 2001), the Indiana Supreme Court acknowledged that,

> when an officer places a person into a patrol car that will be occupied by the officer or other persons, there is a significantly heightened risk of substantial danger to those in the car in the event the detainee is armed.  We believe that this increased risk is sufficient to satisfy the requirements of *Ybarra* [*v. Illinois*, 444 U.S.

11

85, 94 (1979) (a reasonable belief or suspicion directed at the person to be frisked)], and that it is generally reasonable for a prudent officer to pat-down persons placed in his patrol car, even absent a belief of dangerousness particularized to the specific detainee.

*Id.* at 792 (footnote omitted).

¶ 27    Similarly, in State v. Varnado, 582 N.W.2d 886, 891 (Minn. 1998), the Minnesota Supreme Court held that "we agree that officer safety is a paramount interest and that when an officer has a valid reasonable basis for placing a lawfully stopped citizen in a squad car, a frisk will often be appropriate without additional individual articulable suspicion."

¶ 28    These cases thus do not hold that an interest in officer safety arising solely from the decision to place an individual in a patrol car can never justify a pat-down search. Rather, they held, as described by the court in Wilson, that the "Fourth Amendment [does not] permit[] the police routinely to place traffic stop detainees in a police vehicle if this necessarily subjects the detainee to a preliminary pat-down frisk." 745 N.E.2d at 793 (emphasis added). Consequently, without "a particularized justification making it reasonably necessary" to place an individual in a patrol car, an

officer violates the Fourth Amendment by placing the person into the vehicle and thereby subjecting him to a pat-down search. Id.; see also Varnado, 582 N.W.2d at 891-92 ("We will not allow officers to contravene the reasonableness requirement of the Fourth Amendment simply by requesting that a person sit in the squad car.").

¶ 29    But, in holding that a decision to place an individual in a police vehicle does not by itself justify a pat-down search, the Wilson and Varnado courts recognized that if the "various particularized circumstances," Wilson, 745 N.E.2d at 793, causing an officer to require or allow an individual to enter a police vehicle reasonably justify such a decision, a pat-down search before the individual enters the vehicle is not unreasonable under the Fourth Amendment. See id.; Varnado, 582 N.W.2d at 891 ("We are not to be understood as holding that police have no right, for their own protection, to search a person before placing him in a squad car if there is a valid reason for requiring him to enter the vehicle and it is not merely an excuse for an otherwise improper search." (quoting State v. Curtis, 190 N.W.2d 631, 636 (1971)). Because the courts in Wilson and Varnado concluded that there were no circumstances

13

in those cases providing a reasonable basis for requiring the defendants to enter the police vehicles, and the officers did not have a reasonable, articulable suspicion that the defendants were armed and dangerous, the courts held that the pat-down searches of the defendants were unlawful. See Wilson, 745 NE.2d at 792-93; Varnado, 582 N.W.2d at 889-92.

¶ 30 Other cases that the Berdahl division cited (but rejected the holdings of) likewise focused on the reason an officer was requiring or allowing an individual to enter a police vehicle. These cases held permissible the pat-down searches of individuals who were ordered or allowed into police vehicles, whether or not the officer had a reasonable basis to believe that the individual was armed and dangerous, if there was a valid reason for placing the individual in the vehicle and it was not merely an excuse for a search. See Varnado, 582 N.W.2d at 891.

¶ 31 The Berdahl division cited, but rejected, the holding of the California Court of Appeal in People v. Tobin, 269 Cal. Rptr. 81, 82-85 (Cal. Ct. App. 1990), which concluded that the pat-down searches of three men before placing them in a patrol car were reasonable when the officer conducting the searches had a duty to

transport the men off a busy freeway that the officer reasonably believed "would be extremely unsafe" for the men to walk on. See Berdahl, ¶¶ 24-29.

¶ 32    Similarly rejected by Berdahl, id., were holdings of the Illinois intermediate appellate court, the Michigan intermediate appellate court, and the Rhode Island Supreme Court, all of which held that a pat-down search was constitutional, without a specific showing that a person was armed and dangerous, when the police had a valid reason for transporting the person in a police car. People v. Queen, 859 N.E.2d 1077, 1079, 1084-85 (Ill. App. Ct. 2006) (holding that pat-down search of an intoxicated man was reasonable when the officer acted for safety purposes according to departmental policy and reasonably believed that the "defendant was in need of a courtesy ride in the squad car because he could not proceed safely in his condition without assistance"); People v. Hannaford, 421 N.W.2d 608, 609-10 (Mich. Ct. App. 1998) (holding that a pat-down search was reasonable when the officer transported three men at their request late at night, the men had been drinking, and the officer could not contain their movement in the patrol car); State v. Lombardi, 727 A.2d 670, 673-74, 676 (R.I. 1999) (holding that the

pat-down search of a passenger in a validly stopped vehicle was reasonable when he had to be transported home in a police car because he was intoxicated, it was late at night, and the area was not safe for walking).

¶ 33 The Berdahl division was legitimately concerned that a blanket rule that the police may always perform a pat-down search of persons they order or allow into a police vehicle could erode established Fourth Amendment protections. Such a blanket rule would permit evasion of the established Fourth Amendment law that warrantless pat-down searches for weapons are permissible during an investigative stop only when the officer has a reasonable, articulable basis for believing that his safety would be compromised without such a search. See Terry v. Ohio, 392 U.S. 1, 29-31 (1968).

¶ 34 But we think that this concern can be accommodated without subjecting police officers to substantial risk of serious injury or death when transporting a person in a police vehicle by focusing, like the courts in the cases discussed above, on the circumstances of the encounter between the police officer and the individual. A protective pat-down search is permissible only when those circumstances reasonably justify the officer's decision to require or

16

allow the individual to enter the vehicle. Because, for instance, a routine traffic stop does not, without more, vest authority in the officer to demand that the motorist enter the police vehicle, see, e.g., People v. Kinsella, 527 N.Y.S.2d 899, 901 (N.Y. App. Div. 1988), a rule allowing a pat-down search whenever an officer has reasonable justification for placing a person into a police vehicle may not be used as a subterfuge to avoid the established limitations on when a detainee may be subjected to a mandatory pat-down search for weapons. See Curtis, 190 N.W.2d at 636.

¶ 35 For these reasons, we conclude that the cases the Berdahl division rejected are, in fact, the better reasoned cases. In our view, they reach the appropriate balance between the critical interest of officer safety and an individual's right to be free from unreasonable searches and seizures. "The Fourth Amendment was surely not intended to stand for the proposition that police officers must either abandon civilians [in need of assistance] or transport them at the risk of personal safety, rather than transport them at reduced risk of personal safety by first subjecting them to a frisk for weapons." Hannaford, 421 N.W.2d at 610. "[An] officer [is] not required to gamble his life by placing [an individual] in [a] patrol car with him

17

without the precaution of a pat down for weapons." Lombardi, 727 A.2d at 675 (quoting Williams v. State, 403 So. 2d 453, 456 (Fla. Dist. Ct. App. 1981)).

¶ 36    Thus, we hold that when an officer has a valid, reasonable basis for placing an individual into a police vehicle that will be occupied by the officer or other persons, the significantly heightened risk of danger to those in the vehicle in the event the individual is armed justifies a pat-down search of the individual for weapons, irrespective of whether the officer has a reasonable, articulable belief that the individual is armed and dangerous.  See Varnado, 582 N.W.2d at 891.

¶ 37    Applying this holding to the facts of this case, we conclude that the officer had a reasonable, valid basis to permit Gow to enter his police vehicle, and therefore also to conduct a pat-down search of Gow.

¶ 38    The "touchstone" of the Fourth Amendment is "always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." Pennsylvania v. Mimms, 434 U.S. 106, 108 (1977) (citation omitted).  The factual findings made by the trial court, which Gow

18

does not challenge on appeal, establish that Gow voluntarily sought the officer's assistance, which specifically consisted of transport in a police vehicle. At no time during the encounter (at least until the drugs were found) was Gow "seized" under the Fourth Amendment — the officer did not restrain Gow's freedom to walk away by means of physical force or a show of authority. See Terry, 392 U.S. at 16, 19 n.16.

¶ 39    The officer thus had a reasonable, valid basis for allowing Gow to enter the police vehicle — Gow's voluntary decision to seek assistance of that nature and Gow's continued participation in the encounter, which indicated his continued desire for such assistance. Under these circumstances, the pat-down search of Gow was reasonable.

¶ 40    Given our conclusion, it is unnecessary for us to address whether the function of "community caretaking," recognized by the United States Supreme Court in Colorado v. Bertine, 479 U.S. 367, 381 (1987), would provide an independent basis to validate the pat-down search in this case.4

---

4 For an extensive discussion of the reach of the community caretaking function of police, see Michael R. Dimino, Sr., *Police*

## IV. Conclusion

¶ 41    The judgment of conviction is affirmed.

JUDGE ROMÁN and JUDGE NIETO concur.

---

*Paternalism: Community Caretaking, Assistance Searches, and Fourth Amendment Reasonableness*, 66 Wash. & Lee L. Rev. 1485 (Fall 2009).