Filed 4/9/13  P. v. Perez-Isidoro CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CARLOS PEREZ-ISIDORO, <br><br> Defendant and Appellant. | F063780 <br><br> (Super. Ct. No. MF0009762A) <br><br> **OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Lee P. Felice, Judge.

William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Gomes, Acting P.J., Poochigian, J. and Peña, J.

Following the denial of his motion to suppress evidence (Pen. Code, § 1538.5), appellant, Carlos Perez-Isidoro, pled guilty to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). The court imposed the 16-month lower term.

On appeal, appellant's sole contention is that the court erred in denying appellant's suppression motion. We affirm.

## FACTS

California Highway Patrol (CHP) Officer Jason Blais testified that on August 20, 2011, at approximately 2:35 p.m., he was on patrol when he stopped a vehicle for speeding on State Route 58 in Kern County.[1] After determining that the driver did not have a valid driver's license, Officer Blais decided to impound the vehicle.

Appellant and another person were passengers in the vehicle. CHP Officer Robert Main "was called to [the] scene" to transport the vehicle's occupants in his patrol vehicle "[o]ff the freeway to a safe location" while Officer Blais impounded the vehicle.

At some point thereafter, appellant told Officer Blais that he (appellant) had left his backpack in the vehicle. Officer Blais escorted appellant back to the vehicle where appellant retrieved the backpack. Next, Officer Blais escorted appellant to Officer Main, who had arrived on the scene and who, for reasons of "[o]fficer safety," "searched" appellant.

Officer Main testified to the following: When he first made contact with appellant, appellant had his backpack "on him." Officer Main "removed the backpack from [appellant's] person" and searched it for reasons of "[o]fficer safety, before placing it in [the officer's] patrol vehicle." Inside the backpack, Officer Main found, among other things, "numerous baggies," each containing a white crystalline substance he suspected was methamphetamine, and three glass smoking pipes of the kind used for "[s]moking controlled substances." Officer Main also conducted a patdown of appellant.

---

[1] Our factual statement is taken from testimony at the suppression motion hearing and, except as otherwise indicated, from Officer Blais's testimony.

2

## DISCUSSION

"The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees the right to be free of unreasonable searches and seizures. (U.S. Const., 4th Amend. ….)" (*People v. Gallegos* (2002) 96 Cal.App.4th 612, 622.) Appellant contends the search of his backpack was constitutionally unreasonable.

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

At the outset we note what is *not* at issue. Appellant does not challenge the legality of the vehicle stop, the impoundment of the vehicle, or the police decision to transport him and the vehicle's other occupants to a safe location.

In addition, although generally a patdown conducted for officer safety reasons requires specific and articulable facts suggesting the person searched was armed and dangerous (*Terry v. Ohio* (1968) 392 U.S. 1, 21), and here there was no indication appellant presented a danger to the officers, appellant does not challenge the legality of the search of his person. As appellant recognizes, the need to transport a person in an officer's patrol vehicle creates an exigency that entitles the officer to conduct a limited search for weapons, even where the officer has no reason to believe the person is armed and dangerous. (*People v. Brisendine* (1975) 13 Cal.3d 528, 537 (*Brisendine*) superseded by constitutional amendment on other grounds as stated in *In re Lance W.* (1985) 37 Cal.3d 873 [where "exigencies of the situation require that officers travel in close proximity with arrestees, a limited weapons search is permissible"]; *People v. Tobin* (1990) 219 Cal.App.3d 634, 641 [patdown of passenger justified before transport]; *People v. Mack* (1977) 66 Cal.App.3d 839, 848 [patdown search for weapons warranted

3

by need to transport traffic misdemeanant to magistrate]; *People v. Ramos* (1972) 26 Cal.App.3d 108, 112 [patdown of suspected witness before transport was a sensible precaution; officers have been attacked and killed by back seat passengers with concealed guns and knives].)  In such a situation, the increased danger to the officer warrants the minor intrusion of a protective search.  (*Brisendine*, at pp. 537-538; *Tobin*, at p. 641 [exigency and need for public safety supported minimally intrusive patdown].)  "'[T]he officer risks the danger that the [person] may be armed with and draw a weapon.  This danger is not necessarily eliminated by handcuffing the [person] as he may still be able to reach a weapon secreted on his person.  And, incident to the entire process of transportation, it may be impossible for the officer to keep the [person] under constant surveillance by reason of the requirements of driving the vehicle and other responsibilities.'"  (*Brisendine*, at p. 537, fn. omitted.)

Appellant argues, "The exigency which existed and the need for public safety that supported the patsearch of appellant's outer clothing did not at the same time support or justify the search of his backpack."  The search of the backpack, he argues, was "extraneous to officer safety."  In support of this claim, he asserts neither weapons nor contraband were found on his person during the patsearch or on any of his companions; his behavior was not "suspicious"; he "did not appear threatening"; and "there was nothing inherently suspicious about [his] backpack ...."

The factors cited by appellant are irrelevant because, as indicated above, the exigency which we consider here justifies a limited intrusion even in the absence of any indication the person subject to the intrusion is armed and dangerous.  Whether the search of appellant's backpack was justified on exigency grounds requires consideration of other factors.

We recognize that in each of the cases cited above, the search that passed constitutional muster on the grounds that police officers were about to travel in close proximity with the subject of the search was a search of one or more persons, rather than

the search of a container, such as a backpack, in the subject's possession. As indicated above, a limited search such as that in each of the cases cited can be justified, in part, because of the possibility that the person being transported, even if handcuffed, could reach a weapon secreted on his person. As appellant suggests, this particular consideration does not necessarily apply here, in that the backpack could have been secured in the trunk of the patrol car in which appellant was being transported. However, this point is not dispositive.

We reiterate the other consideration articulated by our Supreme Court in *Brisendine*: "'[I]ncident to the entire process of transportation, it may be impossible for the officer to keep the [person] under *constant surveillance* by reason of the requirements of driving the vehicle and other responsibilities.'" (*Brisendine*, *supra*, 13 Cal.3d at p. 537, fn. omitted, italics added.) For the officer transporting appellant, there existed the risk of a traffic accident bringing the vehicle to a stop, or some emergency requiring that the officer stop voluntarily. Just as there is a danger that even a handcuffed passenger in a patrol vehicle can reach a weapon secreted on his person, in the confusion that could ensue as a result of a traffic accident or some other unforeseen circumstance that causes the patrol car to stop, even a locked trunk may not be a foolproof impediment to a passenger who is seeking to retrieve a weapon from a container in the trunk of the patrol car. Under such circumstances, the difficulties an officer would face in keeping a passenger "in constant surveillance" (*ibid*.) could be great. It is not reasonable to require a police officer transporting a person in a patrol vehicle to take the risk of also transporting a backpack, which could easily conceal a weapon, when the officer does not know the contents of the backpack. (See *Pennsylvania v. Mimms* (1977) 434 U.S. 106, 108-109 [in evaluating validity of an officer's investigative or protective conduct, the "touchstone of our analysis ... is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security'"].) Thus, under *Brisendine*, *supra*, 13 Cal.3d 528, at least one of the bases of the rule allowing a minimal

patsearch of person about to be transported by police also applies to the search of appellant's backpack and any container located therein.[2]  Thus, the search at issue here did not violate appellant's Fourth Amendment rights.

The court did not err by denying appellant's suppression motion.

## DISPOSITION

The judgment is affirmed.

---

[2]     In their written opposition to appellant's motion, the People stated that the contraband was found in a cardboard box in the backpack.